IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAMROCK TECHNOLOGIES, INC., <br><br>　　　　　Plaintiff, <br><br>vs. <br><br>REACT-NTI, LLC, <br><br>　　　　　Defendant. | ) <br> ) **Court File No. 07-CV-3114 (JSR)** <br> ) **ECF CASE** <br> ) <br> ) <br> ) **MEMORANDUM IN SUPPORT** <br> ) **OF MOTION TO DISMISS** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Defendant REACT-NTI, LLC ("React") submits this Memorandum of Law in Support of Its Motion to Dismiss.

## INTRODUCTION

Plaintiff, Shamrock Technologies, Inc., ("Plaintiff" or "Shamrock"), asks this Court to ignore the agreement between the parties which requires written notice, good faith negotiation and mediation as conditions precedent to suit. Shamrock, a New Jersey company, has commenced this case against React, a Minnesota company, here in New York in blatant disregard of the dispute resolution portion of that agreement. The Court should dismiss Shamrock's Complaint under Rule 12(b)(1), and Rule 12(b)(6).

# BACKGROUND

## The Parties & License Agreement

React owns the rights to the React-NTI "Maxi-Rub" line of anti-rub ink additives.[1] These additives are used by ink manufactures to prevent ink from rubbing off of paper, represent an economical alternative to additives using higher concentrations of Polytetrafluoroethylene (PTFE, commonly known by its DuPont trade name, "Teflon").

React's predecessor-in-interest and Shamrock executed a License Agreement dated April 10, 2001. By this Agreement React licenses its low-PTFE ink additive technology to Shamrock, and Shamrock manufactures products using the licensed technology.

## Requirement to Mediate Disputes

Under Paragraph 13 of the License Agreement, Shamrock and React agreed on a dispute resolution procedure governing disputes arising under the License Agreement. There, the Parties agreed to attempt to resolve such disputes through good faith negotiation initiated upon written notice from one party to the other. In the event negotiation was unsuccessful, the Parties further expressly agreed to submit the dispute to formal mediation. Specifically, the Parties agreed that:

> Except as provided in Section 12.f of this Agreement, any dispute concerning the validity, interpretation, and performance or non-performance of this Agreement will be resolved by prompt, good faith negotiation of the parties initiated upon written notice from one party to the other. If the matter has not been resolved within sixty (60) days of the disputing party's notice, then the parties shall endeavor to settle the dispute by mediation under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Neutrals unless the parties

---

[1] Support for the Background is found in the accompanying Declaration of Edward M. Laine and exhibits attached thereto, including the Complaint and the License Agreement.

> agree otherwise. All fees and expenses of the mediation shall be borne by the parties equally. However, each party shall bear the expenses of its own counsel, experts, witnesses, travel, and preparation and presentation.

(Compl. Ex. A, ¶13.)

**The Parties' Disputes**

As a review of Shamrock's Complaint reveals, Shamrock's claims against React relate to alleged performance or nonperformance under the License Agreement. Specifically, Shamrock alleges that React breached the License Agreement by refusing to pay for certain products ordered and shipped to Sun-USA, and by contracting with a third party to manufacture and ship licensed technology to Sun-USA. In addition, React believes that it has potential Counterclaims against Shamrock. By way of example, React has learned that Shamrock has been engaging in communications with Sun-USA, communications believed to be calculated to promote Shamrock's own interests in violation of Shamrock's good faith obligations under the License Agreement and which raises questions concerning the ongoing validity of the Agreement.

Shamrock commenced this litigation without first complying with Paragraph 13 of the License Agreement, including particularly the obligations to give written notice, negotiate and mediate. Because this conditions precedent to litigation have not been met, the matter is not ripe for adjudication. Moreover, not only is React willing to negotiate and, if necessary, proceed to mediation, it is hopeful that such negotiation and/or mediation before a third party neutral will provide an opportunity to resolve all existing disputes, including both Shamrock's claims and claims that React would otherwise assert via counterclaim, in a far more cost effective fashion than litigation.

**ARGUMENT**

I.     **Rule 12 Standard**

Fed. R. Civ. P. 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. Encompassed within this jurisdictional requirement is the doctrine of ripeness. "Ripeness is a constitutional prerequisite to the exercise of jurisdiction by federal courts." *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998); *see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). Indeed, ripeness is a jurisdictional question properly considered on a motion to dismiss under Rule 12(b)(1). *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003). Failure to satisfy a condition precedent to the contract may render a cause of action unripe. *Id.* at 295.

React alternatively seeks relief under Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Rule 12(b)(6), the Court should consider facts alleged in the Complaint, as well as documents appended to the Complaint or incorporated in the Complaint by reference, or matters of which judicial notice may be taken. *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Indeed, the Complaint "is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated in it by reference." *Ari & Co. v. Regent Int'l Corp.*, 273 F.Supp.2d 518, 521 (S.D.N.Y. 2003). The Court should dismiss the action if it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999).

II.     **The Action Should Be Dismissed**

This Court lacks subject matter jurisdiction, and relief cannot be granted upon the Complaint, because jurisdiction, for 12(b)(1) purposes, and relief, for 12(b)(6) purposes, are precluded by Paragraph 13 of the Licensing Agreement. That paragraph features a valid and enforceable agreement to negotiate and mediate as a condition precedent to litigation.

A.     **The Mediation Clause is Enforceable.**

An agreement to mediate such as the one in the Licensing Agreement is valid and enforceable, and is governed by the Federal Arbitration Act. The FAA provides that written agreements to resolve disputes through arbitration are, "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. When a mediation clause "manifests the parties' intent to provide an alternative method to 'settle' controversies arising under the parties' . . . agreement, the[e] mediation clause fits within the definition of arbitration." *CB Richard Ellis, Inc. v. American Environmental Waste Mgmt.*, 98-CV-4183, 1998 WL 093495, at *2 (E.D.N.Y. Dec. 4, 1998) (holding that mediation clause falls within FAA definition of "arbitration").

Further, New York law, the law chosen by the Parties to govern the License Agreement, strongly favors alternative dispute resolution over litigation. *See Matter of Nationwide Gen. Ins. Co. v. Investors Ins. Co. of Am.*, 37 N.Y.2d 91, 95 (1975); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 288-90 (2002) (stating that "any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration.") Here, Shamrock's claims, including its claim for payment, relate to alleged "performance or non-performance" under the Licensing Agreement.

The License Agreement does not carve out from the mediation obligation Shamrock's claims for alleged nonpayment as Shamrock apparently will contend. Paragraph 15(c) of the License Agreement contains terms regarding venue. Litigation, if any, is to be commenced in Waukesha County, Wisconsin, except claims for alleged nonpayment to Shamrock may be venued in New York City. However, there is no language exempting alleged nonpayment claims from the dispute resolution obligation contained in Paragraph 13 of the License Agreement. Indeed, the only expressed exception to the obligation contained in Paragraph 13 are those that React would have against Shamrock under Paragraph 12(f) of the License Agreement, claims that Shamrock breached its confidentiality obligations. Plainly, no claim asserted by Shamrock is carved out of the mediation obligation.

Because all of Shamrock's claims arise out of the License Agreement, and relate to performance or non-performance under the Agreement, an application of the FAA requires that the action be dismissed. *Cf. Ponce Roofing, Inc. v. Roumel Corp.*, 190 F. Supp. 2d 264, 267 (D.P.R. 2002) (dismissing case and ordering parties to mediate claims as required by contract, and finding "no reason that would give the court pause in enforcing the [mediation and] arbitration agreement. To the contrary, [Plaintiff's] claims presuppose that the parties entered into a valid agreement.")

6

Moreover, independent of the FAA, basic principles of contract law mandate the validity and enforceability of ADR clauses. *See, e.g.*, *USA Flea Market, LLC v. EVMC Real Estate Consultants, Inc.*, No. 8:06-cv-04310T-24-TBM, 2007 WL 470501, at *3 (M.D. Fla. Feb. 13, 2007). In *USA Flea Market*, for example, the court noted that when parties to a contract have agreed to submit disputes to pre-suit alternative dispute resolution, 'it is simply against general contract principles to permit [one party] to avoid this aspect of their contractual bargain.' (quoting *N. Amer. Van Lines v. Collyer*, 616 So.2d 177, 178-79 (Fla. Dist. Ct. App. 1993)).

### B.    The Court Lacks Jurisdiction and Should Dismiss Under Rule 12(b)(1).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens For a Better Environment*, 523 U.S. 83, 94, (1998)) (citing *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). "In a personal action, jurisdiction of the subject-matter and of the person are absolutely essential to the power of the court to decide a legal controversy. Unless both exist, it is the imperative duty of the court to decline to do more than ascertain and declare that it has no power to examine and decide the merits of the case." *Noxon Chemical Products Co. v. Leckie*, 39 F.2d 318, 319-20 (3d Cir.1930).

As this Court noted in *Duane Reade,* failure to satisfy a condition precedent to a plaintiff's entitlement to relief makes a cause of action unripe, and deprives the court of

subject matter jurisdiction. 261 F. Supp. 2d at 293-95. For example, in *Ziarno v. Gardner Carton & Douglas, LLP*, the parties agreed that:

> [A]ny dispute shall be resolved in [ ] a summary, low-cost procedure in which we will jointly appoint a qualified and independent mediator-arbitrator who has special expertise in such matters. If we are not able to agree on a mediator-arbitrator who has special expertise in such matters, we will submit the dispute to mediation, and if necessary arbitration, under the rules of the American Arbitration Association.

No. 03-3880, 2004 WL 838131, at *3 (E.D. Pa. April 8, 2004). Despite this provision, Plaintiff filed suit in federal Court without first pursuing relief under the mediation/arbitration procedure. The court dismissed the complaint, both on the basis of personal jurisdiction and subject matter jurisdiction, with respect to the latter stating, "The Court finds that the unambiguous intent expressed in the contract was for the parties to submit to private mediation/arbitration prior to bringing suit. Therefore the Court does not have subject matter jurisdiction over this claim at this time." *Id.*

Similarly, in this case, the Parties agreed that "any dispute concerning the validity, interpretation, and performance or non-performance of this Agreement will be resolved by prompt, good faith negotiation of the parties initiated upon written notice from one party to the other. If the matter has not been resolved within sixty (60) days of the disputing party's notice, then the parties shall endeavor to settle the dispute by mediation . . . ." Nevertheless, and like the *Ziarno* plaintiff, Shamrock filed the present action without any attempt to comply with the dispute resolution procedure to which it agreed. And like the *Ziarno* action, the present action should be dismissed.

8

### C. Plaintiff Cannot Be Entitled to Relief and Dismissal is Required by Rule 12(b)(6).

Though it may simply be another way of saying the same thing, mediation agreements may also be enforced via dismissal or judgment under Rule 12(b)(6). That is, even if the allegations in a complaint are taken as true, the plaintiff cannot be entitled to relief where he has failed to satisfy the necessary conditions precedent to suit. Similarly, some courts convert Rule 12(b)(6) motions to Rule 56 motions if it is necessary to consider matters outside the pleadings to assess the satisfaction of a condition precedent. *See, e.g., See, e.g., USA Flea Market,* 2007 WL 470501 at *3 (converting Rule 12 motion to Rule 56 motion and assessing factual satisfaction of condition where complaint alleged that "all conditions precedent to the maintenance of this action have occurred, been performed or waived.") Here, however, Shamrock has failed to allege compliance with the Licensing Agreement's dispute resolution requirement, thus conversion to summary judgment at this juncture is unnecessary.

But regardless of which rule is relied upon, courts consistently dismiss or grant summary judgment in cases where a party fails to comply with a mediation clause before filing a lawsuit. *E.g., USA Flea Market,* 2007 WL 470501, at *3 (granting summary judgment on grounds that plaintiff failed to satisfy pre-suit mediation provision); *Mortimer v. First Mount Vernon Industrial Loan Ass'n,* No. Civ. AMD 03-1051, 2003 WL 23305155 at *1 (D. Md. May 19, 2003) (dismissing complaint for plaintiff's failure to mediate as required by contract); *Ponce Roofing, Inc. v. Roumel Corp.,* 190 F. Supp. 2d 264, 267 (D.P.R. 2002) (dismissing case and ordering parties to mediate claims as

required by contract); *see also HIM Portland, LLC v. DeVito Builder, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003); *Bill Call Ford Inc. v. Ford Motor Co.*, 48 F.3d 201, 208 (6th Cir. 1995); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326 (7th Cir. 1987).

## CONCLUSION

For the foregoing reasons, Defendant React-NTI respectfully requests that this Court grant Defendant's Motion to Dismiss.

Date:  May 3, 2007                **IRA DANIEL TOKAYER, ESQ.**

By  s/ Ira Tokayer
    Ira Daniel Tokayer                (#4734)

42 West 38th Street
Suite 802
New York, New York 10018
Phone: (212) 695-5250

*ATTORNEY FOR DEFENDANT REACT-NTI, LLC*