## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAMROCK TECHNOLOGIES, INC., | ) **Court File No. 07-CV-3114 (JSR)** |
| Plaintiff, | ) **ECF CASE** |
| | ) |
| vs. | ) **DECLARATION OF** |
| | ) **EDWARD M. LAINE** |
| REACT-NTI, LLC, | ) |
| Defendant. | ) |

I, Edward M. Laine, hereby state:

1.     I am a member of Oppenheimer Wolff & Donnelly, LLP, a law firm which serves as outside general counsel to React-NTI, LLC ("React").

2.     React is a developer of proprietary renewable resource based additives. Among those additives are the Maxi-Rub line of anti-rub ink additives. These additives are used by ink manufacturers to prevent ink from rubbing off of paper, and the additives represent an economical alternative to additives using higher concentrations of Polytetrafluoroethylene (PTFE, commonly known by its DuPont tradename, "Teflon").

3.     Our firm was retained to both conduct a preliminary investigation and to work with retained counsel in New York with respect to litigation commenced against React by Shamrock Technologies, Inc. ("Shamrock"). True and correct copies of the Summons, Complaint and Exhibits attached to the Complaint in the action commenced by Shamrock are attached hereto as Exhibit 1.

4.    As a review of Shamrock's Complaint reveals, Shamrock's allegations arise out of a License Agreement dated April 10, 2001, between Shamrock and React's predecessor-in-interest.  In general terms, the technology licensed to Shamrock pertains to anti-rub ink additives used to prevent ink from rubbing off of paper.  The License Agreement is attached to the Complaint as its Exhibit A.

5.    The License Agreement contains a dispute resolution provision which, as provided with greater particularity in Paragraph 13 thereof, obligates the parties to endeavor to try to settle disputes by mediation under the Center for Public Resources Model Procedure for Mediation of Business Disputes in Waukesha, Wisconsin.

6.    Shamrock commenced this action without first complying with the provisions of Paragraph 13 of the License Agreement, including particularly the obligation to mediate.  React is hopeful that mediation will provide a meaningful opportunity to arrive at a resolution of existing disputes arising out of the License Agreement.  Those disputes would not only involve the matters alleged in Shamrock's Complaint, but would also include matters that React would otherwise raise by Counterclaim.  By way of example, React has learned that Shamrock has been engaging in communications with Sun-USA (a React customer), communications believed to be calculated to promote Shamrock's own interests in violation of Shamrock's good faith obligations under the License Agreement.  Mediation before a neutral third party will, in the view of React, provide a meaningful opportunity to attempt a resolution on a far less costly basis than litigation.

7.    Retained litigation counsel for React, Ira D. Tokayer, has written to counsel for Shamrock requesting that he withdraw this action and comply with the dispute resolution procedures provided for in the License Agreement.  A true and correct copy of Mr. Tokayer's correspondence is attached as Exhibit 2.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  May 2, 2007.

Edward M. Laine

OPPENHEIMER: 2500113 v01 05/02/2007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index. No.  0 7/600933
Date Purchased  3/22/07

Plaintiff designates New York
County as the place of trial

SHAMROCK TECHNOLOGIES, INC.,

                              Plaintiff,

            -against-

REACT-NTI, LLC,

                              Defendant.

The basis of venue is para. 15 of
the License Agreement between
the parties

**SUMMONS**

Plaintiff resides at
Foot of Pacific Avenue
Newark, New Jersey

To the above named Defendant:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and
to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance on the plaintiff's attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

*Dated:* March 21, 2007

                    GIBNEY, ANTHONY & FLAHERTY, LLP

                    By: _____
                         Wm. Lee Kinnally, Jr.
                         *Post Office Address*
                         665 Fifth Avenue
                         New York, NY 10022
                         (212) 688-5151
                         (212) 688-8315 – fax
                         wlkinnally@gibney.com

*Defendant's address:*

6680 Northern Highway 49
Lino Lakes, Minnesota

S:\Litigate\WPDOCS\shamrock\react\WLK3096.DOC

NEW YORK
COUNTY CLERK'S OFFICE

MAR 2 2 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------

SHAMROCK TECHNOLOGIES, INC.,

Plaintiff,

-against-

REACT – NTI, LLC,

Defendant.
-------------------------------------------------------------

**COMPLAINT**

Plaintiff, by its attorneys, Gibney, Anthony & Flaherty, LLP, for its complaint, respectfully alleges:

## STATEMENT OF THE CASE

1.     This is an action to recover the cost of goods manufactured for and sold to defendant pursuant to the terms of a written License Agreement dated April 10, 2001 between the parties ("License Agreement"), for unjust enrichment, for breach of contract, for a declaratory judgment concerning the scope of rights and obligations under the License Agreement, and for an accounting.

## JURISDICTION AND VENUE

2.     This Court has personal jurisdiction over defendant pursuant to para. 15 of the License Agreement.

3.     Venue is proper in New York County pursuant to para. 15 of the License Agreement.

**The Parties**

4.    Plaintiff is a corporation organized and existing pursuant to the laws of the State of New York and has its principal place of business at the Foot of Pacific Street, Newark, New Jersey.

5.    On information and belief, defendant is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 6680 Northern Highway 49, Lino Lakes, Minnesota.  On information and belief, defendant is the successor in interest in and to the business of React, LLC, the licensor under the License Agreement.

**The License Agreement**

6.    Pursuant to para. 3 of the License Agreement (Exhibit "A"), defendant granted plaintiff "the sole and exclusive license to use the Licensed Technology [as that term is defined in the License Agreement] and to manufacture, market and sell the Licensed Products [as that term is defined in the License Agreement] throughout the entire World except for any and all sales of the Licensed Products sold and shipped to locations in the United States of Sun Chemical Corporation ("Sun-USA") its holding company, affiliates, sister companies, subsidiaries and its successors and assigns ...."

7.    With respect to the sales to Sun-USA, defendant agreed, in para. 2, to purchase from plaintiff, and plaintiff agreed to manufacture and ship, all of the Licensed Products sold by React to Sun-USA:

> Shamrock agrees to manufacture and ship, at Shamrock's expense, all Licensed Products sold by React to Sun-USA in accordance with React's purchase orders directed to Shamrock.  React shall pay Shamrock a fee of eighty-five percent (85%) of its Net Sales Revenue (as defined in 3 b.) to Sun in consideration for Shamrock manufacturing and shipping all of React's Sun-USA orders.  If

- 2 -

there is a freight cost to Shamrock, in the case where React sells at delivered prices, then React will reimburse Shamrock 15% of the freight cost.

## AS AND FOR A FIRST CAUSE OF ACTION

8.    Plaintiff repeats and realleges each and every allegation set forth in paras. 1 through 7.

9.    Pursuant to the License Agreement, plaintiff manufactured for defendant, at defendant's special instance and request, certain Licensed Products that were, in turn, sold by defendant to Sun-USA and shipped by plaintiff to Sun-USA pursuant to defendant's direction ("invoiced Licensed Products").  From November 9, 2006 through January 17, 2007 plaintiff sold to and invoiced defendant the following invoiced Licensed Products:

| Date | Invoice No. | Product | Invoiced Amount | Amount Due |
|------|-------------|---------|-----------------|------------|
| 11/09/06 | 155549 | MR-101 | $96,800.00 | $82,280.00 |
| 11/10/06 | 155579 | MR-102 | $41,360.00 | $35,156.00 |
| 11/10/06 | 155597 | MR-101 | $ 4,950.00 | $4,207.50 |
| 11/29/06 | 155896 | MR-101 | $96,800.00 | $82,280.00 |
| 12/13/06 | 156201 | MR-101 | $ 3,300.00 | $2,805.00 |
| 12/13/06 | 156206 | MR-101 | $ 2,200.00 | $1,870.00 |
| 12/19/06 | 156315 | MR-101 | $66,000.00 | $56,100.00 |
| 12/19/06 | 156319 | MR-102 | $56,400.00 | $47,940.00 |
| 01/17/07 | 156824 | MR-101 | $ 2,200.00 | $1,870.00 |
| Total | | | $370,010.00 | $314,508.50 |

Copies of the above invoices and bills of lading are annexed as Exhibit "B".

10.    Defendant has neither returned the invoiced Licensed Products nor made payments on any of the outstanding invoices.

11.    Defendant is indebted to plaintiff for $314,508.50.

- 3 -

## AS AND FOR A SECOND CAUSE OF ACTION

12.     Plaintiff repeats and realleges each and every allegation set forth in paras. 1 through 11.

13.     Defendant has been unjustly enriched by the acceptance by defendant of the invoiced Licensed Products and the sale by defendant to Sun-USA without payment therefor by defendant.

14.     Plaintiff has been damaged in the amount of $314,508.50.

## AS AND FOR A THIRD CAUSE OF ACTION

15.     Plaintiff repeats and realleges each and every allegation set forth in paras. 1 through 14.

16.     On information and belief, defendant has no manufacturing capabilities. Instead, it either subcontracts out manufacturing to third-parties, or enters into licensing arrangements such as exists with plaintiff.

17.     On information and belief, in breach of the License Agreement, plaintiff has either contracted with a third-party or entered into a License Agreement with a third-party to use Licensed Technology to manufacture and ship an unknown quantity of Licensed Products to Sun-USA that defendant has sold to Sun-USA.

18.     As a result thereof, plaintiff has lost sales of Licensed Product to React and has been damaged in an amount to be determined at trial.

- 4 -

## AS AND FOR A FOURTH CAUSE OF ACTION

19.    Plaintiff repeats and realleges each and every allegation set forth in paras. 1 through 18.

20.    Plaintiff has put defendant on notice that the manufacture and shipment of Licensed Products by a third party using Licensed Technology and the sale of such Licensed Products by defendant is a breach of the License Agreement.

21.    In response, defendant has replied that the License Agreement "does not require that React source Licensed Products intended for Sun exclusively from Shamrock."

## AS AND FOR A FIFTH CAUSE OF ACTION

22.    Plaintiff repeats and realleges each and every allegation set forth in paras. 1 through 21.

23.    Pursuant to both an oral agreement with defendant and industry practice in order to have on hand, for immediate shipment, sufficient inventories of Licensed Products for defendant's customer, Sun-USA, plaintiff has purchased raw materials that were used to manufacture certain minimum quantities of the Licensed Products that were retained in inventory for delivery to defendant's customer, Sun-USA.    At the present time, plaintiff has an inventory of the following quantities of manufactured Licensed Products valued at $303,100:

| Product | Quantity | Value |
|---------|----------|-------|
| MR-101 | 88,000 lbs @ $2.75/lb | $242,000 |
| MR-102 | 26,000 lbs @ $2.35/lb | $61,100 |
| **Total** | | $303,100 |

- 5 -

23.    Defendant has refused to purchase the above inventory of Licensed Products from plaintiff.

24.    As a result thereof, defendant has breached both the License Agreement and its oral contract with plaintiff.

25.    On information and belief, defendant has supplied Sun-USA with Licensed Products that were manufactured by a third-party instead of purchasing the above inventory of Licensed Products from plaintiff.

26.    Plaintiff has been damaged in the amount of $303,100.

## AS AND FOR A SIXTH CAUSE OF ACTION

27.    Plaintiff repeats and realleges each and every allegation set forth in paras. 1 through 25.

28.    Pursuant to para. 3(f) of the License Agreement, defendant is required to "keep accurate books and records showing the quantity and type of all Licensed Products sold by React to Sun." In addition, defendant's "books and records shall be available for audit and inspection . . . during the regular business hours once per year and upon a reasonable notice to the other, during the term of this Agreement . . . ."

29.    Plaintiff has requested, in writing, that defendant make its books and records available for audit and inspection and defendant has refused such request.

WHEREFORE, plaintiff demands judgment against defendant as follows:

a.    on the First Cause of Action, in the amount of $314,508.50;

b.    on the Second Cause of Action, in the amount of $314,508.50;

c.    on the Third Cause of Action, in an amount to be determined at trial;

- 6 -

   d.  on the Fourth Cause of Action, declaring that defendant must use plaintiff exclusively to manufacture Licensed Products that are sold by defendant to Sun-USA;

   e.  on the Fifth Cause of Action, in the amount of $303,100;

   f.  on the Sixth Cause of Action, directing defendant to make its books and records available for audit and inspection; and directing defendant to account to plaintiff for all sales of Licensed Products sold by defendant to Sun-USA;

   g.  together with the costs and disbursements of this action and such other and further relief as this court deems just and proper.

Dated: New York, New York
      March 21, 2007

               **GIBNEY, ANTHONY & FLAHERTY, LLP**

By: _____
             Wm. Lee Kinnally, Jr.
             Attorneys for Plaintiff
             665 Fifth Avenue
             New York, New York 10022
             (212) 688-5151
             (212) 688-8315 – fax

- 7 -

# Exhibit A

# LICENSE AGREEMENT

THIS AGREEMENT is made effective this 10th day of April, 2001, by and between React, LLC, a Wisconsin limited liability company ("React") and Shamrock Technologies, Inc., a New York Corporation ("Shamrock").

## RECITALS:

A.    React owns certain products (hereinafter referred to as the "Products") that React is offering to Shamrock on a Worldwide Exclusive basis to manufacture, use or sell in accordance with the terms and conditions of this Agreement. The Products are described on Schedule A.

B.    React owns certain technology or know-how (hereinafter the "Licensed Technology") that React is offering to Shamrock on a Worldwide Exclusive basis to use in accordance with the terms and conditions of this Agreement. The Licensed Technology is defined below and is described on Schedule B.

C.    React owns or has filed for patents regarding the Products or the Licensed Technology. The Patents are listed on Schedule C.

D.    React owns all of the Products, Licensed Technology, and Patents, including all improvements, alterations and modifications with respect to the Products, Licensed Technology and Patents, whether created, formulated or generated by Shamrock or jointly by React and Shamrock except as described in 2 d.

E.    React agrees to offer all future Products, Product Improvements or new technology containing waxes or polymers such as polyethylene (PE), polytetrafluoroethylene (PTFE), polypropylene (PP) or other rub or abrasion additives (hereinafter referred to as the "Future Licensed Products") to the ink, coatings or other chemical industries competitive with the Products under the terms and conditions set forth in this Agreement.

F.    Shamrock desires to obtain worldwide rights from React to use the Licensed Technology and to manufacture, use or sell the Licensed Products.

G.    The parties desire to enter into an Agreement whereby React grants Shamrock the right to use the Licensed Technology to manufacture, market and sell the Licensed Products on the terms and conditions set forth herein.

1.    Licensed Technology. "Licensed Technology" means any and all know-how, oral or written, trade secrets, patents, patent applications, inventions, secret processes, formulas, formulations, alterations and modifications to the formulas, trade names, descriptions, data and advice, oral or written, including but not limited to reports, letters, drawings, customer names, distributors, training and operational manuals, blending procedures, manufacturing techniques, specifications, bills of material, sources of materials or supplies, and photographs relating to machines, compositions, designs, molds, techniques, processes, advertising and merchandising

programs, marketing programs and strategies, and the like, used or developed by React in the manufacturing, development, formulating, processing, inspecting, testing, packaging, marketing, distributing or sale of the Licensed Products.

2.   <u>License</u>. Beginning on the date first written above and for the time period as stated under this Agreement, React hereby grants to Shamrock the sole and exclusive license to use the Licensed Technology and to manufacture, market and sell the Licensed Products throughout the entire World except for any and all sales of the Licensed Products sold and shipped to locations in the United States of Sun Chemical Corporation, its holding company, affiliates, sister companies, subsidiaries and its successors and assigns (collectively, "Sun-USA")

Shamrock agrees to manufacture and ship, at Shamrock's expense, all Licensed Products sold by React to Sun-USA in accordance with React's purchase orders directed to Shamrock. React shall pay Shamrock a fee of eighty-five percent (85%) of its Net Sales Revenue (as defined in 3 b.) to Sun in consideration for Shamrock manufacturing and shipping all of React's Sun-USA orders. If there is a freight cost to Shamrock, in the case where React sells at delivered prices, then React will reimburse Shamrock 15% of the freight cost.

a.   React will maintain sole ownership of the Licensed Products and the Licensed Technology, with or without patents. A list of the patents as of the date of this Agreement is attached as Schedule C.

b.   Shamrock will provide quality assurance laboratory support to assess product specifications of Products directly produced by Shamrock.

c.   Modified or improved versions of the Licensed Products or Licensed Technology by React will be added to the Product or Licensed Technology list in Schedule A or B respectively.

d.   In the event Shamrock discovers new and unusual inventions based on the Licensed Technology and/or any Confidential Information (as defined below), then the resulting new technology or products shall be jointly owned by React and Shamrock and Shamrock shall have the right to manufacture, use or sell the resulting new technology or products on a Worldwide Exclusive basis and shall pay to React a Royalty Fee (as described below) in accordance with the terms and conditions of this Agreement in the same manner as the Royalty Fee applies to the Licensed Products. Upon termination of this Agreement for any reason, either party shall then have the right to manufacture, market and sell the new technology or products, provided the selling party pays to the other party twenty percent (20%) of the Net Sales Revenue for the new technology or products until any patent for the new technology or products expires. Notwithstanding any provision in this Agreement to the contrary, this provision shall survive the termination of this Agreement.

3.   Payments and Reports. In consideration of the rights and licenses herein granted:

a.      Shamrock shall pay React Three Hundred Thousand and No/100 Dollars ($300,000.00) (the "License Fee") no later than seven working days from the date first written above.

b.      Except for sales to Sun which are exclusively React sales, Shamrock shall pay a royalty to React of fifteen percent (15%) of Shamrock's Net Sales Revenue (as defined below) for the Licensed Products (the "Royalty Fee"). Net Sales Revenue whenever used in this agreement means the gross sales price, minus returns, rebates, freight, duties, and currency corrections to U.S. dollars. Shamrock shall calculate the Net Sales Revenue for the Licensed Products with respect to any sales paid in foreign currency in the same manner as Shamrock calculates such conversions for Shamrock's other products. In the event Shamrock sells to a Distributor (who is not necessarily the ultimate end customer), the Net Sales Revenue will be calculated in the same manner as sales direct by Shamrock to the end user, with the gross sales price being Shamrock's price to the Distributor. Distributor, when used herein shall mean independent third party distributor not owned or controlled by Shamrock, in whole or in part, and in which Shamrock has no affiliation, other than as the manufacturer and seller of the Licensed Products.

c.      During the term of this Agreement, Shamrock will pay React an Expense Fee up to Twelve thousand dollars within each 12 month period commencing on the date first written above. The Expense Fee will be paid within 10 work days of receiving the proper receipts]. In the event React licenses and transfers to Shamrock all sales responsibility for the sales of Licensed Products to Sun-USA, which license and transfer must be by written amendment to this Agreement, Shamrock's obligation to thereafter pay the monthly Expense Fee shall be eliminated.

d.      Shamrock shall remit payments to React under this Agreement at such address as shall be specified to Shamrock by React in writing from time to time. Royalty Fee payments shall be mailed on the 25th day of the month immediately following the month in which Licensed Products were shipped by Shamrock. In the event the 25th day of a month is a Saturday, Sunday, or legal holiday, then the Royalty Fee payment shall be mailed on the next business day. Shamrock shall supply to React with each monthly royalty check a statement of the Net Sales Revenue for the Licensed Products shipped during the previous month, name and address of the purchasing customer(s), the amount purchased by each customer and of which product and the price charged.

e.      React shall remit payments to Shamrock for sales to Sun-USA at such address as shall be specified to React by Shamrock in writing from time to time. React's payments to Shamrock shall be mailed on the 25th day of the month immediately following the month in which sales are completed and shipments are received by Sun-USA. In the event the 25th day of the month is a Saturday, Sunday, or legal holiday, then the payment shall be mailed on the next business day. React shall supply to Shamrock with each monthly check a statement of the Net Sales Revenue for the Licensed Products sold by React to Sun during the previous month.

f.      Shamrock shall keep accurate records showing the quantity and type of all Licensed Products sold by Shamrock. React shall keep accurate books and records showing the quantity and type of all Licensed Products sold by React to Sun. All of the parties" books and records shall be available for audit and inspection by the other during regular business hours once per year and upon reasonable notice to the other, during the term of this Agreement and for a period

of three years following the termination of this Agreement, provided, however, books and records with respect to any new technology or products which are jointly owned by React and Shamrock shall be available for audit and inspection notwithstanding the termination of this Agreement. For any adjustment or discrepancy determined by an auditing party after any review or during any audit, which adjustment is not disputed by the audited party within ten days, said adjustment shall be deemed correct, and the audited party shall then have the responsibility to pay the fees, if any, on such adjustment. If an audit shows an error in the audited party's statements and reports to the other in an amount exceeding one percent (1%) as reported by the audited party, the audit expense, up to a maximum amount of $5,000.00, increased by five percent (5%) per year during the term of this Agreement, shall be paid by the audited party and otherwise by the auditing party. If a dispute arises over said adjustment or correction, then said dispute shall be submitted to mediation as provided in Section 13.

   4.    Purchase of Materials and Products. Within 10 days of the date first written above], Shamrock agrees to purchase from React any unused PTFE raw materials (still in unopened drums), purchased by React from Shamrock within the past twelve months. Shamrock will waive the restocking charge. Shamrock will also purchase any open drums, however open drums will be inspected by Shamrock upon receipt by Shamrock to ensure the returnable PTFE is salable. No payments will be made on any unsalable or unusable material in open drums because of contamination or other reasons. However, partial payment will be made to React on all unusable material in opened drums that can be reworked by Shamrock after subtracting the cost of rework. Shamrock shall deliver payment to React for the PTFE raw materials within ten days of receipt of the raw materials.

   5.    Manufacturing and Marketing.

   a.    After full payment of the License Fee as described in Section 4 of this Agreement, React shall deliver to Shamrock those items of the Licensed Technology requested by Shamrock in writing. React agrees not to provide, nor shall React be required to provide, any item of Licensed Technology not requested by Shamrock. Accordingly, before any Licensed Technology is disclosed to Shamrock, React agrees to describe in general terms the content of the information to be disclosed and will not provide such information if not specifically requested by Shamrock in writing. A form for the transfer of the information desired by Shamrock will be provided to React to identify the desired information. Any written information provided by React that is not requested by Shamrock will not be considered Confidential.

   b.    Shamrock agrees to begin manufacturing, marketing and selling the Licensed Products within thirty (30) days after it has been provided the items of the Licensed Technology it has requested from React (the "Initial Sale Period").

   c.    Shamrock agrees, at its own cost and expense, to purchase all materials necessary for the manufacturing and marketing of the Licensed Products. All materials necessary for the manufacturing of the Licensed Products shall meet the specifications set out by React in the Licensed Technology in order to meet quality standards.

   d.    Within thirty (30) days after React has delivered the items of the Licensed Technology requested by Shamrock to Shamrock, Shamrock shall have acquired and shall

thereafter maintain adequate personnel and equipment to manufacture, market and sell the Licensed Products throughout the world and meet customer demand.

  e.  Shamrock shall maintain adequate capital reserves or establish an adequate line of credit to purchase all materials and supplies necessary to meet its obligations under this Agreement and to meet the demand for the Licensed Products and to market and sell the Licensed Products throughout the world.

  f.  The economic viability of this Agreement to React is the ability of Shamrock to manufacture and sell a minimum number of pounds of Licensed Product. The minimum quotas described herein shall include all sales made by React to Sun. Failure to meet these quotas shall constitute cause for React terminating this Agreement on thirty (30) days written notice to Shamrock in accordance with the conditions described in 7c. Based upon the foregoing, Shamrock shall be obligated to manufacture and sell the Licensed Products in accordance with the following minimum quotas:

  (1)  For the first 12 month period of this Agreement from the date first written above, sales of a minimum of 250,000 pounds of the Licensed Products during each calendar quarter. Any sales of the Licensed Products during a calendar quarter in excess of the minimum quota shall carry over and accumulate to the next calendar quarter so that the minimum quota for sales of the Licensed Products during said year shall be 1,000,000 pounds.

  (2)  For the second 12 month period of this Agreement from the date first written above, sales of a minimum of 500,000 pounds of the Licensed Products during each calendar quarter. Any sales of the Licensed Products during a calendar quarter in excess of the minimum quota shall carry over and accumulate to the next calendar quarter so that the minimum quota for sales of the Licensed Products during said year shall be 2,000,000 pounds.

  (3)  For the third 12 month period of this Agreement from the date first written above], sales of a minimum of 750,000 pounds of the Licensed Products during each calendar quarter. Any sales of the Licensed Products during a calendar quarter in excess of the minimum quota shall carry over and accumulate to the next calendar quarter so that the minimum quota for sales of the Licensed Products during said year shall be 3,000,000 pounds.

  (4)  For each 12 month period , starting on the 37th month from the date first written above, the minimum quotas in each calendar quarter and year shall increase by fifteen percent (15%) from the previous 12 month period.

  (5)  Notwithstanding the foregoing minimum quotas, however, in the event during the term of this Agreement Shamrock has paid to React Royalty Fees in excess of $2,500,000.00, then and in that event Shamrock shall no longer be subject to any minimum quotas.

After the first 6 months from the date first written above, if Shamrock shall fail to manufacture and sell one or more of the Licensed Products during any calendar quarter during the term of this Agreement, Shamrock shall be deemed to have abandoned all of Shamrock's rights under this Agreement with respect to the particular Licensed Product and the particular Licensed Product shall no longer be subject to this Agreement at the sole option of React who must confirm such desire in

writing within 15 days after the Royalty Fee payment is made by Shamrock at the end of the calendar quarter.

React may notify Shamrock in writing of any potential customer for any of the Licensed Products. Shamrock shall then notify React in writing within ten days after receipt of React's notice as to whether Shamrock is willing to market and sell the Licensed Products listed in React's notice to the potential customer under the terms and conditions of this Agreement. If Shamrock does not so notify React in writing or if Shamrock's notice states Shamrock is not willing to market and sell the Licensed Products to the] potential customer, then React may sell any of the Licensed Products listed in React's notice to the potential customer and Shamrock shall manufacture and ship the Licensed Products on the same basis as Licensed Products are sold to Sun under this Agreement.

6.    <u>Consultation and Technical Assistance</u>.

    a.    For a period of two (2) months following the payment of the License Fee, React shall make available an authorized representative knowledgeable with the Licensed Technology and Licensed Products at Shamrock's facilities at such mutually agreeable times arranged in advance for consultation concerning Shamrock's use of Licensed Technology and training of Shamrock's personnel. Shamrock shall reimburse React for all reasonable expenses incurred by React with respect to such consultation and training within fifteen (15) days of receipt of React's invoice, accompanied by reasonable documentation and receipts evidencing the expenses.

    b.    React and the React representative shall at all times be independent contractors and not employees and shall file all tax returns and tax reports consistent with such classification.

7.    <u>Term and Termination</u>.

    a.    This Agreement begins on the date first written above, and ends on December 31, 2010, unless earlier terminated as provided in this Agreement.

    b.    This Agreement may be terminated by either party in the event of any material breach of this Agreement by the other party, which breach shall remain unremedied for thirty (30) days after written notice of such breach delivered as provided below to the breaching party which describes the alleged breach with specific definiteness and particularity to permit the breaching party to identify, investigate and remedy the alleged breach.

    c.    This Agreement may be terminated by React in the event Shamrock does not meet the minimum quotas as provided in Section 5.f. of this Agreement, upon written notice to Shamrock, in which event Shamrock may continue to use the Licensed Technology and manufacture, market and sell the Licensed Products on a nonexclusive basis, but otherwise in accordance with the terms and conditions of this Agreement (other than the minimum quotas) for a period of 18 months from the date of React's notice. During said 18-month period, React shall be free to use or license others to use the Licensed Technology and to manufacture, market, and sell the Licensed Products free from any terms, covenants, or restrictions contained in this Agreement.

d.    Either party has the sole right to terminate this Agreement if the other party files a petition of bankruptcy, becomes insolvent, makes an assignment for benefit of creditors, or if a trustee or receiver is appointed for a party, and such of the foregoing remains undismissed for a period of 60 days.

e.    Upon the termination of this Agreement, Shamrock warrants and agrees that it, its employees and agents shall not utilize or disclose the Licensed Technology or manufacture, market, distribute or sell Licensed Products or any improvements, alterations or modifications thereof except for the terms and conditions described in 7c.

8.    Liability Insurance.  Shamrock agrees at its expense to maintain throughout the term of this Agreement a Product Liability Insurance Policy, with amounts acceptable to React, with React listed as an additional insured, which policy may only be cancelled on thirty (30) days prior written notice to React and proof of new insurance with the same coverage limits.

9.    Assignment.

a.    Neither party can assign or transfer any of its rights or obligations hereunder without the prior written consent of the other party except that either party may assign this Agreement, together with all of its terms and conditions, to any party or entity that acquires all of the business and becomes the owner of the assigning party.

b.    This Agreement will be binding upon and inure to the benefit of the parties and their permitted assigns.  In the event of a permitted assignment by a party of its rights and/or obligations hereunder, the assigning party shall include a provision in its contract with the assignee that binds the assignee to abide by all terms and conditions of this Agreement.

10.    Improvements and Inventions.

a.    Any discovery, invention, alteration, modification or improvement with respect to the Licensed Products which is conceived and developed solely by React will be the individual property of React and subject to the terms of this Agreement as though the product were a Licensed Product. React will have the right to apply, in its sole discretion, for patent protection for such discovery in its own name and at its own expense, and Shamrock will cooperate with React in connection with any such application and the prosecution thereof.

b.    Only the Licensed Products and discoveries, improvements, inventions, alterations or modifications to those Licensed Products are licensed to Shamrock by this Agreement.

c.    Shamrock may not modify or in any way alter the Licensed Products, raw materials used in the production of the Licensed Products or the production process without the prior written approval of React.

11.    <u>Warranty, Disclaimers, and Indemnification.</u>

a.    React warrants that the design, formula, process and manufacture of any of the Licensed Products and all of the Licensed Technology will not infringe any United States or foreign patent and agrees to defend and indemnify and hold Shamrock harmless against all claims, losses, damages, liabilities, costs and expenses (including, without limitation, reasonable attorney's fees) incurred by reason of any such infringement or alleged infringement. In the event that Shamrock shall become aware of any claim of infringement, Shamrock shall provide React with written notice of the same and React shall have reasonable opportunity to defend, compromise and/or pay any such claims. In the event that React shall fail to defend, compromise, or pay such claims then Shamrock shall have the option of paying the claim and React agrees that it will reimburse Shamrock on demand for any reasonable payment made by Shamrock any time during the term of this Agreement in respect of any liability, obligation or claim to a third party to which the foregoing indemnity by React relates. The parties acknowledge that there are numerous products on the market today which might be considered competitive in one manner or another with the Licensed Products developed by React. Shamrock agrees that if the Licensed Products become, or in the opinion of React are likely to become, the subject matter of a claim, Shamrock will permit React, at its option and expense, either to: (a) procure the right for Shamrock to continue selling the Licensed Products; or (b) replace or modify the Licensed Products so that they do not infringe any patent. Notwithstanding the foregoing, React shall not, under any circumstances, be liable to Shamrock for damages for loss of profit. React shall have no liability hereunder for any claim which is based on a use or modification of the Licensed Products for a purpose for which the Licensed Products were not designed by React. Other than as provided in this subparagraph 11a React provides no other representations or warranties, express or implied, or indemnities with respect to the Licensed Products, Licensed Technology or this Agreement whatsoever.

b.    Shamrock warrants to React that the Licensed Products it produces will be free from defects in material and workmanship.

c.    Shamrock agrees to defend, indemnify and hold React harmless from claims, losses, damages, liabilities, costs and expenses (including, without limitation, reasonable attorney's fees) in connection with Shamrock's manufacturing, marketing or sale of the Licensed Products arising out of any defect in material or workmanship, failure to manufacture or market any Licensed Products in accordance with specifications or directions provided by React or in the event Shamrock sells any Licensed Products for any end use for which the product was not intended. It is intended that Shamrock seek guidance from React before selling any of the Licensed Products for any end use not originally recommended by React. For products made by Shamrock, in accordance with specifications and instructions provided by React, and sold by React to Sun USA, React will accept full responsibility for any claims arising from the sale of such products.

d.    If either party is entitled to indemnification hereunder because of a claim asserted by any claimant other than a party hereto (a "Third Party"), the party entitled to indemnification (the "Indemnified Party") shall give to the other party (the "Indemnifying Party") reasonably prompt notice thereof after such assertion is actually known to the Indemnified Party. The Indemnifying Party shall have the right, upon written notice to the Indemnified Party, to investigate, secure, contest, or settle the claim alleged by such Third Party (a "Third Party Claim"). The Indemnified Party may thereafter participate in the defense of any such Third Party Claim with

its own counsel at its own expense. Unless and until the Indemnifying Party so acknowledges its obligation to indemnify, the Indemnified Party shall have the right, at its sole option, to assume and control defense of the matter and to look to the Indemnifying Party for the full amount of the costs of defense. The failure of the Indemnifying Party to respond in writing to the aforesaid notice of the Indemnified Party with respect to such Third Party Claim within 20 days after receipt thereof shall be deemed an election not to defend the same. If the Indemnifying Party does not so acknowledge its obligation to indemnify and assume the defense of any such Third Party Claim, (1) the Indemnified Party, in good faith, may defend against such claim, in such manner as it may deem appropriate, including, but not limited to, settling such claim, after giving notice of the same to the Indemnifying Party, on such terms as the Indemnified Party, in good faith, may deem appropriate, and (2) the Indemnifying Party may participate in (but not control) the defense of such action, with its own counsel at its own expense. The parties shall make available to each other all relevant information in their possession relating to any such Third Party Claim and shall cooperate in the defense thereof.

12.    <u>Confidentiality/Property Rights.</u>

a.    During the term of this Agreement, Shamrock will be provided with and will have access to confidential information belonging to React and which is the sole property of React, including but not limited to, internal procedures, programs, forms, the Licensed Technology, Licensed Products and all modifications, improvements and alterations to the Licensed Products, and other documents and information provided to Shamrock by React (collectively the "Confidential Information"). Confidential Information does not include:

(1)    Any knowledge or information which was already in the possession of Shamrock or its representatives, as shown by written records within a single integrated document or group of documents which refer to each other, prior to their disclosure by React, or which is developed by Shamrock subsequent to this Agreement, but which can be shown to have been developed entirely independent of the disclosure of Confidential Information.

(2)    Any information shown to be in the public domain or a matter of public knowledge, through no fault of Shamrock and which is contained within a single integrated document or group of documents which refer to each other.

b.    Shamrock covenants and agrees that during the term of this Agreement and for a period of ten years following the termination of this Agreement, Shamrock will not use or disclose any Confidential Information except as allowed under this Agreement.

c.    Shamrock agrees to enter into confidentiality agreements in the form attached hereto in Schedule D with those Shamrock employees who will be provided with or have access to the Confidential Information. Shamrock warrants and represents that such confidentiality agreements will be signed by the applicable Shamrock employees prior to the disclosure of any Confidential Information to the employee.

d.    The Confidential Information will not be disclosed to anyone other than those Shamrock employees who have executed the confidentiality agreements described herein, without the prior written consent of React. Further, Shamrock will be in default under this

Agreement if it fails to enforce the terms of any confidentiality agreements with its employees or former employees.

e.     Confidential Information disclosed orally shall be identified as such within ten business days of disclosure. Confidential Information disclosed in writing shall be marked "Confidential." Any information which is not identified as "Confidential" in writing will not be bound by the terms of this Section 12.

f.     Notwithstanding any other language in this Agreement, Shamrock stipulates and agrees that a breach or a threatened breach by Shamrock of any of the covenants, restrictions or agreements made by Shamrock in this Section 12 will result in damages which are difficult to ascertain and will cause irreparable injury to React. Accordingly, Shamrock agrees that React shall be entitled to immediate injunctive relief against Shamrock for any breach or threatened breach of such covenants, restrictions or agreements. If Shamrock is found to have violated the covenants, restrictions or agreements of this Agreement and React succeeds on obtaining an injunction against Shamrock, Shamrock will pay all Reacts costs and attorneys fees incurred in such action.

g.     Upon termination of this Agreement for any reason, Shamrock will: (1) discontinue all manufacturing, marketing, distributing and/or sales of the Licensed Products and discontinue use of any of the Licensed Technology and any other Confidential Information; (2) return all Licensed Technology and other Confidential Information to React and retain no records of the Licensed Technology, Licensed Products or other Confidential Information; and (3) not use for sale, development or otherwise any of the Licensed Technology, Licensed Products or other Confidential Information for its own benefit or the benefit of any other party without the written consent of React. Shamrock agrees to execute, at the time of termination of this Agreement, a statement representing and warranting to React that it has returned all of the Confidential Information.

13.   Dispute Resolution. Except as provided in Section 12.f. of this Agreement, any dispute concerning the validity, interpretation, and performance or non-performance of this Agreement will be resolved by prompt, good faith negotiation of the parties initiated upon written notice from one party to the other. If the matter has not been resolved within sixty (60) days of the disputing party's notice, then the parties shall endeavor to settle the dispute by mediation under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Disputes in Waukesha, Wisconsin. The neutral third party will be selected from the CPR Panels of Neutrals unless the parties agree otherwise. All fees and expenses of the mediation shall be borne by the parties equally. However, each party shall bear the expenses of its own counsel, experts, witnesses, travel, and preparation and presentation.

14.   Force Majeure. If the performance of this Agreement, or of any obligation hereunder is prevented, restricted or interfered with by reason of fire, flood, court order, war, requirement of any government authority or any other acts beyond the reasonable control of a party hereto, the party so affected, upon giving notice to the other party, shall be excused from such performance to the extent of such prevention, restriction or interference; provided that the party so affected shall use its best efforts to remove such causes of non-performance and shall make up, continue and complete full performance with the utmost dispatch whenever such causes are removed.

15.    <u>General Provisions.</u>

      a.     All notices given under this Agreement shall be in writing, and shall be sent to the following address by registered mail, postage prepaid or at such other address as either party shall designate in writing to the other.

<u>If to React</u>:
React, LLC
Attn:  James A. Stuart
3765 Kettle Court East
Delafield, WI  53018

<u>If to Shamrock</u>:
Shamrock Technologies, Inc.
Attn: President
117 Docks Corner Road
Dayton, NJ  08810

      b.     This Agreement may be amended or modified only by an instrument in writing executed by the parties.

      c.     This Agreement will be governed, construed and enforced in accordance with the laws of the State of New York regardless of the laws that might otherwise govern under applicable principles of conflicts of laws.  Venue for any proceeding shall be Waukesha County, Wisconsin and the parties waive any objection to venue except in the event that React fails to make the appropriate payments due Shamrock as provided in this Agreement, then the venue shall be  New York City.  In the case of Third Party legal proceedings brought against Shamrock for which React is an Indemnifying Party to Shamrock under this Agreement, then Shamrock, at its sole option, may designate the venue of the Third Party legal proceedings as the venue for any action for indemnification against React.

      d.     The language used in this Agreement shall be deemed to be the language chosen by both of the parties hereto to express their mutual intent, and no rule strict construction shall be applied against either party.

      e.     The various terms, provisions and covenants herein contained shall be deemed to be separable and severable and the invalidity or unenforceability of any of them shall in no manner affect or impair the validity or enforceability of the remainder hereof.

      f.     The captions in this Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretations of any provision of this Agreement.

      g.     When the context in which the words are used in this Agreement indicates that such is the intent, words in the singular shall include the plural and vice versa, and pronouns in the masculine shall include the feminine and neuter, and vice versa.

h.     This instrument, together with the Schedules attached hereto and incorporated by reference herein, constitutes the entire agreement of the parties with respect to the transactions contemplated hereby, and there are no other agreements, whether oral or written, between the parties with respect to the transactions contemplated hereby.

i.     Time is of the essence of this Agreement in every part hereof and no extension or variation of this Agreement shall operate as a waiver of this provision.

In witness whereof, the parties have caused this Agreement to be executed by their duly authorized officers and representatives effective the day and year first above written.

[signatures on the following page]

REACT, LLC

By: _James Stuart - Pres._
James Stuart, President

Attest: _Beverly Schlipp, Sec._
Beverly Schlipp, Secretary

SHAMROCK TECHNOLOGIES, INC.

By: _Laurence Weissman_
Laurence Weissman, CEO and President

- 13 -

SCHEDULE A – PRODUCTS

(LAST DATE OF UPDATE ...  April 10, 2001)]

(Complete Descriptions to be Provided Upon Payment of License Fee)

| Product | Description |
|---------|-------------|
| 100 | Two component votated product – can be patented |
| 101 | Four component mixture – contains (15 to 25%) PTFE. Can be patented. |
| 102 | Five component mixture – contains (15 to 25%) PTFE. Can be patented. |
| 103 | Natural product (pure white).  Patent applied for composition and process.  May be an anti-misting product in heat-set inks.  Could be used in packaging process lube. |
| 104 | Product for Ink – evaluated by Sun.  Contains (45%) PTFE and is mixed with a vehicle. |
| 105 | By product from PTFE manufacture.  Reclaim and resell. |
| 106 | Two component votated product – petrolatum replacement – can be patented |

## SCHEDULE B – TECHNOLOGY

### LAST DATE OF UPDATE ... April 10, 2001

(Complete Descriptions to be Provided Upon Payment of License Fee)

| Product | Description |
|---------|-------------|
| 100 | Two component Votated product. |
| 101 | Four component mixture – contains (15 to 25%) PTFE is first heated and then cooled to 160 deg F.  Viscosity is determined by %PTFE and can be made pourable. Requires sweep arm mixing kettle.  *MR 102* |
| 102 | Five component mixture – contains (15 to 25%) PTFE. Can be patented. Manufacture is similar to B1.  Heat to 200 F  3 fluids 50 / 15 / 10%  and add PTFE. Steel drums at 140-160 F. |
| 103 | Natural product (pure white).  Product is irradiated and micronized. |
| 104 | Product for Ink – evaluated by Sun.  Contains (45%) PTFE and is mixed with a vehicle.  *(violated Roof patent.)  MR-101* |
| 105 | Byproduct from PTFE manufacture.  Reclaim and resell. |
| 106 | Two component votated product – petrolatum replacement |

## SCHEDULE C – PATENTS

### LAST DATE OF UPDATE .... April 10, 2001

(Complete Descriptions to be Provided Upon Payment of License Fee)

| Product | Description |
| --- | --- |
| 100 | Can be patented.  Two component votated product. |
| 101 | ???? patent.  Four component mixture – contains (15 to 25%) PTFE |
| 102 | ???? patent.  Five component mixture – contains (15 to 25%) PTFE |
| 103 | Patent applied for composition and process.  Natural product (pure white). |
| 104 | ???? patent.  Product for Ink – evaluated by Sun.  Contains (45%) PTFE and is mixed with a vehicle. |
| 105 | ???? patent.  Byproduct from PTFE manufacture.  Reclaim and resell. |
| 106 | Can be patented |

SCHEDULE D


SHAMROCK TECHNOLOGIES, INC.
117 Docks Corner Road
Dayton, New Jersey 08810

NAME: _____     DATE: _____

CONFIDENTIALITY AGREEMENT

In connection with your employment by Shamrock Technologies, Inc. (the "Company") or any affiliate thereof, the Company shall furnish you with certain Information relating to the Company and other matters which is either non-public, confidential or proprietary in nature. The aforementioned Information includes, but is not limited to, products, formulae, processes, apparatus, research and development programs, business plans, finance and financial results, trends, budgets, data processing, engineering, marketing, proposals to market, merchandising, selling, clients, suppliers, machines, services, manufacturing and purchasing and shall hereinafter be referred to as the "Information." For purposes hereof, the term Information shall mean, without limitation, Information you encounter or are provided orally, in written form or other tangible medium, in connection with your employment by the Company.  In consideration of your employment by the Company, you agree that:

1.      The Information shall be kept confidential and shall never, without the prior written consent of the Company, be disclosed by you in any manner whatsoever, in whole or in part, and shall never be used by you other than in connection with your employment by the Company.

2.      Upon termination of your employment with the Company, for any reason, you shall not take with you any drawings or other documents (whether originals or reproductions), any tangible evidence of Information or any other data in tangible form belonging to the Company. If, for any reason upon termination of your employment with the Company, you are in possession of Information in written or other tangible form, including without limitation, in the form of computer diskettes or on a computer drive, you shall immediately return such Information to the Company or, upon the Company's request, shall destroy such Information, in no event retaining any copy of the Information. Promptly after destroying the Information pursuant hereto, you shall provide the Company with written notice confirming such destruction.

3.      Any intangible Information you possess following termination of your employment with the Company shall be kept confidential and shall be subject to the terms of this Agreement.

4.      The term Information shall not include such portions of the Information furnished to you which (i) are or become generally available to the public other than as a result of an act or omission by you, or (ii) become available to you on a non- confidential basis from a source other than the Company which is not prohibited from disclosing such Information to you by a legal, contractual or fiduciary obligation to the Company or any other person.

5.   In the event that you or anyone to whom you transmit the Information pursuant to this Agreement becomes legally compelled to disclose any of the Information, you will provide the Company with prompt notice so that we may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that such protective order or other remedy is not obtained, or that the Company waives compliance with the provisions of this Agreement, you will furnish only that portion of the Information which you are advised by written opinion of counsel acceptable to the Company is legally required and will exercise your best efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

6.   You understand that the continued confidentiality of the Information is critical to the Company and essential to the continued good will and ultimate success and profitability of the Company and that such confidentiality goes to the essence of this Agreement. Accordingly, you agree that use or disclosure of the Information in a manner inconsistent with the Agreement will cause the Company irreparable damage and that the remedy at law of the Company for any actual or threatened breach of this Agreement by you will be inadequate and that the Company shall be entitled, as a matter of right, to specific performance hereof or injunctive relief, by temporary injunction or other appropriate judicial remedy, writ or order, in addition to any damages which the Company may be legally entitled to recover, together with reasonable expenses of litigation, including attorneys' fees incurred in connection therewith.

7.   I agree that all inventions, copyrightable material, secret processes, formulae, trademarks, trade secrets and like (collectively "Inventions") discovered or developed by myself while in the employ of Shamrock or any Shamrock Entity, whether in the course of my employment or otherwise on such employer's time or property, shall be disclosed promptly to Shamrock and shall be the exclusive property of Shamrock. I shall assign all such property to Shamrock, and I agree to execute such instruments of transfer, assignment, conveyance or confirmation and such other documents as may reasonably be requested by Shamrock to transfer, confirm and perfect in Shamrock all legally protestable rights in any such Inventions.

8.   This Agreement supersedes and takes the place of all previous agreements between you and the Company with regard to its subject matter.

9.   You acknowledge that you have carefully read and fully understand this Agreement and you are entering into this Agreement voluntarily. You further acknowledge that the Company has explained the contents of this Agreement and the consequences of your signature, and that you have had sufficient time to consider the decision to sign this Agreement.

10.   The obligations and restrictions herein contained pertaining to the use of the Information shall survive termination of this Agreement and termination of your employment by the Company.

11.   This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its conflict of laws, principles or rules.

By: Larry Weissman
CEO - President Shamrock Technologies, Inc.


ACCEPTED AND AGREED TO:

By:_____

Date:_____

# Exhibit B



Phone: 973-242-2999
Fax: 973-242-8074

Shamrock Technologies, Inc.
Foot of Pacific Street
Newark, New Jersey 07114

| INVOICE DATE | INVOICE NO. |
|---|---|
| 11/09/06 | 155549 |

530019

530020

| | | |
|---|---|---|
| S O L D | REACT INC<br>621 ROBIN LANE<br>HARTLAND, WI 53029 | S H I P T O: SUN CHEMICAL CORP.<br>2642 WEST STATE ROAD 28<br>FRANKFORT, IN 46041 |

**PLEASE REMIT TO:**   SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 0719

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. COLL. | TERMS |
|---|---|---|---|---|---|
| 1118 | 278571 | JOON CHOO | TOTAL CONNECT | XX | NET 30 DAYS |

| QUANTITY ORDERED | SHIPPED | BACK ORDERED | DESCRIPTION | PRICE PER LB. | AMOUNT |
|---|---|---|---|---|---|
| 35200 | 35200 | | MAXI-RUB 101<br>88 X 400 LB DRUM | 2.750 | $96,800. |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 11/09/06    $96,800.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended."
Subject to the terms and conditions contained on the reverse side thereof.

| INVOICE NO. |
|---|
| 155549 |

CUSTOMER FILE COPY

**CARRIER:**

**DATE:**

**CUSTOMER NO:**

| TO: | Sun Chemical-Frankfort | FROM: | REACT, INC. |
| STREET: | 2641 West State Road 28 | Street: | 621 ROBIN LANE |
| DESTINATION: Frankfort, IN 46041 | | Destination: | HARTLAND, WI 53029 |

Route:
Vehicle #

☒ PREPAID
☐ COLLECT

(COD)
Collect on delivery $

COD FEE TO BE PAID BY:
☐ shipper   ☐ consignee

☐ CHECK HERE IF COMPANY CHECK IS ACCEPTABLE

| NO. UNITS | HAZ MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
|---|---|---|---|
| 98 | | DRUM MAXI-RUB 101 PRINTING INK RAW MATERIAL | 35,200 lbs |
| | | SUN CHEMICAL PO#6500-666666 Class: 55 | |
| | | SUN CHEMICAL ITEM# 534-399 | |
| | | CO SHIPMENT SAMPLES | |
| | | ***THIRD PARTY BILLING  TOTAL CONNECTION | |
| | | 1478 MORRIS AVENUE | |
| | | UNION, NJ 07083 | |
| | | REACT, INC. | |
| | | 621 ROBIN LANE | |
| | | HARTLAND, WI 53029 | |

NOTE-Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of property. Where no value is stated, shipper is subject to the Inadvertence Clause. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

$_____ per _____

RECEIVED, subject to the classifications and pricing in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and conditions in the governing classification on the date of shipment.

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED AND LABELED, AND ARE IN PROPER CONDITION FOR TRANSPORTATION, ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION.

Shipper hereby certifies that he is familiar with all the Bill of Lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his consigns.

Subject to Section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:
The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

(Signature of consignor)

| Shipper: | | Carrier: | |
| | REACT, INC. | Per: | |
| Per: | DEBBIE TAVARES | Date: | |

**"X" to designate HAZARDOUS MATERIAL** as defined in the Department of Transportation Regulations Governing Transportation of Hazardous Materials. The use of this column is an optional method of designating hazardous materials on bills of lading per Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials.

** "Sun Chemical must sign acknowledging acceptance of delivery in good condition.

Per _____    Date: 11-9-06

# STRAIGHT BILL OF LADING

TOTAL P.05



**Shamrock Technologies, Inc.**
Foot of Pacific Street
Newark, New Jersey 07114

Phone: 973-242-2999
Fax: 973-242-8074

PACKING SLIP
FROM

| INVOICE DATE | INVOICE NO. |
| --- | --- |
| 11/10/06 | 155579 |

530019

S O T
O L
D

REACT INC
621 ROBIN LANE
HARTLAND, WI 53029

530020

REACT, INC
621 ROBIN LANE
HARTLAND, WI

S
H
I
P
T
O

SUN CHEMICAL CORP.
2648 WEST STATE ROAD 28
FRANKFORT, IN 46041

PH: 562/367-2049
FAX: 765-654-5064

**PLEASE REMIT TO:** SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 07191

SOLD TO    Sun Chemical Frankfort

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. | COLL. | TERMS |
| --- | --- | --- | --- | --- | --- | --- |
| 121 | 278691 20 | JOON CHOO | TOTAL CONNECT | XX | | NET 30 DAYS |

| QUANTITY ORDERED | SHIPPED | BACK ORDERED | DESCRIPTION | PRICE PER LB. | AMOUNT |
| --- | --- | --- | --- | --- | --- |
| 17600 | 17600 | | MAXI-RUB 102 44 X 400 LB DRUM | 2.350 | $41,360.0 |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 11/10/06     $41,360.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended." Subject to the terms and conditions contained on the reverse side thereof.

INVOICE NO.
155579

**CUSTOMER FILE COPY**

@005

| CARRIER: | DATE: |
|---|---|

CUSTOMER NO:

| TO: | Sun Chemical-Frankfort | FROM: | REACT, INC. |
|---|---|---|---|
| | 2642 West State Road 28 | Street: | 621 ROBIN LANE |
| Destination: | Frankfort, IN 46041 | Destination: | HARTLAND, WI 53029 |

Route:
Vehicle # **5444**

☒ PREPAID
☐ COLLECT

(COD)
Collect on delivery $

COD FEE TO BE PAID BY:
☐ shipper    ☐ consignee

☐ CHECK HERE IF COMPANY CHECK IS ACCEPTABLE

| NO. UNITS | HAZ MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
|---|---|---|---|
| 44 | | DRUMS MAXI-RUB 102 PRINTING INK RAW MATERIAL | 17,600 lbs |
| | | SUN CHEMICAL PO #6500-668482 | |
| | | SUN CHEMICAL ITEM # 532-397    CLASS: 55 | |
| | | CO SHIPMENT SAMPLES | |
| | | | |
| | | ***THIRD PARTY BILLING TOTAL CONNECTION | |
| | | 1478 Morris Avenue | |
| | | Union, NJ 07083 | |
| | | | |
| | | | |
| | | REACT, INC. | |
| | | 621 ROBIN LANE | |
| | | HARTLAND, WI 53029 | |

NOTE--Where the rate is dependent on value, shippers are required To state specifically in writing the agreed or declared value of property. Where the value shown, shipment is subject to the Inadvertence Clause. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

Subject to Section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement.
The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
(Signature of consignor)

$

RECEIVED, subject to the classification and pricing, in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party in any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification on the date of shipment.

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED, AND LABELED, AND ARE IN PROPER CONDITION FOR TRANSPORTATION, ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION.

Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

Shipper:

| Per: | REACT, INC. | Carrier: | *Mister P Express* |
|---|---|---|---|
| | DEBBIE TAVARES | Per: | |
| | | Date: | 11-10-06    11 Skids |

*"X" to designate HAZARDOUS MATERIAL as defined in the Department of Transportation Regulations Governing Transportation of Hazardous Materials. The use of this column is an optional method of designating hazardous materials on bills of lading per Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials.

**Sun Chemical must sign acknowledging acceptance of delivery in good condition.**
**Per:**                                    **Date:**

# STRAIGHT BILL OF LADING

Third Party Billing To
Total Connection
1478 Morris Ave.
Union, NJ 07083



Phone: 973-242-2999
Fax: 973-242-8074

Shamrock Technologies, Inc.
Foot of Pacific Street
Newark, New Jersey 07114

| INVOICE DATE | INVOICE NO. |
|---|---|
| 11/10/06 | 155597 |

530019

```
S   REACT INC
O:T 621 ROBIN LANE
L:D HARTLAND, WI 53029
```

530001C

```
S
H:T SUN CHEMICAL - BOUCHERVILLE
I:O 1439 RUE GRAHAM BELL
P   BOUCHERVILLE, QUEBEC
    CANADA - J4B 6A1
```

PLEASE REMIT TO:    SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 07191

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESMAN | SHIPPED VIA | PPD COLL | | TERMS |
|---|---|---|---|---|---|---|
| 1119 | 278782 | JACK GALLAGHER | ROADWAY | | XX | NET 30 DAYS |

| QUANTITY ORDERED | QUANTITY SHIPPED | BACK ORDERED | DESCRIPTION | PRICE PER LB. | AMOUNT |
|---|---|---|---|---|---|
| 1800 | 1800 | | MAXI-RUB 101 | 2.750 | $4,950.0 |
| | | | REFER:TO OUR INV 155452 DATED 11.3.06 | | |
| | | | INVOICED YOU FOR 200 LBS. INSTEAD OF | | |
| | | | 2000 LBS. | | |
| | | | BALANCE DUE 1800 LBS. @ $2.75/LB | | |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 11/03/06        $4,950.0

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by
this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended."
Subject to the terms and conditions contained on the reverse side thereof.

| INVOICE NO. |
|---|
| 155597 |

CUSTOMER FILE COPY



3530

Phone: 973-242-2999
Fax: 973-242-8074

Shamrock Technologies, Inc.
Foot of Pacific Street
Newark, New Jersey 07114

| INVOICE DATE | INVOICE NO. |
|---|---|
| 11/29/06 | 155896 |

530019

S O T  REACT INC
L O    621 ROBIN LANE
D      HARTLAND, WI 53029

530020

S   T  SUN CHEMICAL CORP.
H I O  2642 WEST STATE ROAD 28
P      FRANKFORT, IN 46041

**PLEASE REMIT TO:**    SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 0719

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. | COLL. | TERMS |
|---|---|---|---|---|---|---|
| 1127 | 279033 | JOON CHOO | TOTAL CONNECT | XX | | NET 30 DAYS |

| QUANTITY ORDERED | SHIPPED | BACK ORDERED | DESCRIPTION | PRICE PER LB. | AMOUNT |
|---|---|---|---|---|---|
| 35200 | 35200 | | MAXI-RUB 101<br>88 X 400 LB  DRUM | 2.750 | $96,800.0 |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 11/29/06        $96,800.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended." Subject to the terms and conditions contained on the reverse side thereof.

**CUSTOMER FILE COPY**

| INVOICE NO. |
|---|
| 155896 |

P. 2

7323559765

*I 79033*

7323559765        P. 05/05

## CARRIER:

**DATE:**

|  | **CUSTOMER NO:** |
|---|---|

| **TO:** | Sun Chemical-Frankfort | **FROM:** | REACT, INC. |
|---|---|---|---|
| **STREET:** | 2642 West State Road 28 | Street: | 621 ROBIN LANE |
| **DESTINATION:** Frankfort, IN 46041 | | Destination: | HARTLAND, WI 53029 |
| Route: | | | |
| Vehicle # | | | |

| | X | PREPAID |
|---|---|---|
| | | COLLECT |

(COD)
Collect on delivery $ ☐          COD FEE TO BE PAID BY: ☐ shipper  ☐ consignee
        ☐ CHECK HERE IF COMPANY CHECK IS ACCEPTABLE

| NO. UNITS 88 | HAZ MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
|---|---|---|---|
| | | DRUM MAXI-RUB 101 PRINTING INK RAW MATERIAL | 35,200 lbs |
| | | SUN CHEMICAL FO#6500-670901 Class: 55 | |
| | | SUN CHEMICAL ITEM# 532-393 | |
| | | CO SHIPMENT SAMPLES | |
| | | | |
| | | ***THIRD PARTY BILLING  TOTAL CONNECTION | |
| | | 1478 MORRIS AVENUE | |
| | | UNION, NJ 07083 | |
| | | REACT, INC. | |
| | | 621 ROBIN LANE | |
| | | HARTLAND, WI 53029 | |

NOTE-Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of property. Where no value shown, agreed or declared value of the property is subject to the law contractual Clause. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

Subject to Section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. [Signature of consignor]

RECEIVED, subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification on the date of shipment.

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED, AND ARE IN PROPER CONDITION FOR TRANSPORTATION, ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION.
Shipper hereby certifies that he is familiar with all of the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

| Shipper: | Carrier: |
|---|---|
| REACT, INC. | |
| Per: | Per: |
| DEBBIE TAVARES | Date: |

***"X" to designate HAZARDOUS MATERIAL as defined in the Department of Transportation Regulations Governing Transportation of Hazardous Materials.  The use of this column is an optional method of designating hazardous materials on bills of lading per Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials.

**Sun Chemical must sign acknowledging acceptance of delivery in good condition.
Per: _[signature]_          Date: 1-27-06

## STRAIGHT BILL OF LADING

TOTAL P.05

# SHAMROCK

Phone: 973-242-2999
Fax: 973-242-8074

Shamrock Technologies, Inc.
Foot of Pacific Street
Newark, New Jersey 07114

| INVOICE DATE | INVOICE NO. |
|---|---|
| 12/13/06 | 156201 |

530019                                     53001C

| | | |
|---|---|---|
| S O T L O | REACT INC<br>621 ROBIN LANE<br>HARTLAND, WI 53029 | S H T I O P |

SUN CHEMICAL - BOUCHERVILLE
1439 RUE GRAHAM BELL
BOUCHERVILLE, QUEBEC
CANADA - J4B 6A1

PLEASE REMIT TO:   SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 0719

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. | COLL. | TERMS |
|---|---|---|---|---|---|---|
| 1131 | 279389 | JACK GALLAGHER | ROADWAY | | XX | NET 30 DAYS |

| QUANTITY | | BACK | DESCRIPTION | PRICE PER LB. | AMOUNT |
|---|---|---|---|---|---|
| ORDERED | SHIPPED | ORDERED | | | |
| 1200 | 1200 | | MAXI-RUB 101<br>3 X 400 LB  DRUM | 2.750 | $3,300.0 |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 12/13/06       $3,300.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended." Subject to the terms and conditions contained on the reverse side thereof.

CUSTOMER FILE COPY

| INVOICE NO. |
|---|
| 156201 |

7323559765    P.05/06

**FOR SHIPMENT STATUS, CALL 1-800 ROADWAY**

**CARRIER:**

**DATE**

CUST
322-172980-3

Roadway's tariffs are incorporated herein hereby available upon request. Roadway's
tariffs limit its liability. This shipment is subject to the terms and conditions of the
Uniform Straight Bill of Lading as stated in the NMFC 100 series tariff.

| | |
|---|---|
| **TO:** Sun Chemical Boucherville | **FROM:** REACT, INC. |
| **STREET:** 1439 Rue Graham Bell | **Street:** 621 ROBIN LANE |
| **DESTINATION:** Boucherville, Canada | **Destination:** HARTLAND, WI, 53029 |
| J4B 6A1 | |

**Route:**
**Vehicle #**

☐ **PREPAID**
☒ **COLLECT**

**(COD)**
Collect on delivery $ _____    COD FEE TO BE PAID BY:
☐ **CHECK HERE IF COMPANY CHECK IS ACCEPTABLE** ☐ shipper ☐ consignee

| NO. UNITS | HAZ MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
|---|---|---|---|
| 3 | | DRUM MAXI-KUB 101 PRINTING INK RAW MATERIAL | 1,200 lbs |
| | | SUN CHEMICAL PO#4500002976 Class: 55 | |
| | | SUN CHEMICAL ITEM# 531-393 | |
| | | CD SHIPMENT SAMPLES | |
| | | | |
| | | ***SHIP SUN CHEMICAL COLLECT*** | |
| | | | |
| | | REACT, INC. | |
| | | 621 ROBIN LANE | |
| | | HARTLAND, WI 53029 | |

NOTE-Where the rate is dependent on value, shippers are required
to state specifically in writing the agreed or declared value of the
property. Subject to adjusted to the freshwater clutch wherein the
property is hereby specifically stated by the shipper to be not exceeding.

RECEIVED, subject to the classifications and pricing in effect on the date of the issue of this Bill of Lading...

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED AND LABELED, AND
ARE IN PROPER CONDITION FOR TRANSPORTATION ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF
TRANSPORTATION.

Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said freight and conditions are hereby agreed to by
the shipper and accepted for himself and his assigns

**Shipper:**

REACT, INC.

Per: DEBBIE TAVARES

**Carrier:** RDwy 901917

Tim R

Date: 12-13-06    Skid with 3 Drums

*"X" to designate HAZARDOUS MATERIALS as defined in the Department of Transportation Regulations Governing Transportation
of Hazardous Materials. The use of this column is an optional method of designating hazardous materials on bills of lading per
Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials.*

**Sun Chemical must sign acknowledging acceptance of delivery in good condition.**

Per: _____    Date: _____

# STRAIGHT BILL OF LADING



Phone: 973-242-2999
Fax: 973-242-8074

Shamrock Technologies, Inc.
Foot of Pacific Street
Newark, New Jersey 07114

| INVOICE DATE | INVOICE NO. |
|---|---|
| 12/13/06 | 156206 |

530019

SOLD TO: REACT INC
621 ROBIN LANE
HARTLAND, WI 53029

530006

SHIP TO: SUN CHEMICAL
651 GARDEN STREET
CARLSTADT NJ 07072

**PLEASE REMIT TO:** SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 0719

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. | COLL | TERMS |
|---|---|---|---|---|---|---|
| 1133 | 279398 | JOON CHOO | R & L | | XX | NET 30 DAYS |

| QUANTITY ORDERED | SHIPPED | BACK ORDERED | DESCRIPTION | PRICE PER LB. | AMOUNT |
|---|---|---|---|---|---|
| 800 | 800 | | MAXI-RUB 101<br>2 X 400 LB DRUM | 2.750 | $2,200. |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 12/13/06    $2,200.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended."
Subject to the terms and conditions contained on the reverse side thereof.

**CUSTOMER FILE COPY**

| INVOICE NO. |
|---|
| 156206 |

LASERJET 3330                                                     P.4

7323559765                                      7323559765    P.05/05

BL#304365

78155846-1

**CARRIER:**

**DATE:**

| | CUSTOMER NO: |

| TO: | Sun Chemical - Teterboro | FROM: | REACT, INC. |
| STREET: | 651 Garden Street | Street: | 621 ROBIN LANE |
| DESTINATION: | Carlstadt, NJ 07072 | Destination: | HARTLAND, WI 53029 |

Route:
Vehicle h

[ ] PREPAID
[X] COLLECT

(COD)
Collect on delivery $

COD FEE TO BE PAID BY:
[ ] shipper    [ ] consignee

[ ] CHECK HERE IF COMPANY CHECK IS ACCEPTABLE

| NO. UNITS | HAZ. MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
| --- | --- | --- | --- |
| 1 | | DRUM MAXI-RUB 101 PRINTING INK RAW MATERIAL | 800 lbs |
| | | SUN CHEMICAL PO#000-673215 Class: 55 | |
| | | SUN CHEMICAL ITEM# 532-393 | |
| | | CD SHIPMENT SAMPLES | |
| | | ***SUN CHEMICAL COLLECT*** | |
| | | REACT, INC | |
| | | 621 ROBIN LANE | |
| | | HARTLAND, WI 53029 | |

Shipper:    REACT, INC.    Carrier:

Per:    DEBBIE TAVARES    Per:

Date:

"X" to designate HAZARDOUS MATERIAL as defined in the Department of Transportation Regulations Governing Transportation of Hazardous Materials. The use of this column is an optional method of designating hazardous materials on bills of lading per Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials.

**Sun Chemical must sign acknowledging acceptance of delivery in good condition.**

Per: Behat M. H                Date: 12-13-06   (3 Drums)

**STRAIGHT BILL OF LADING**

TOTAL P.05



Phone: 973-242-2999
Fax: 973-242-8074

Shamrock Technologies, Inc.
Foot of Pacific Street
Newark, New Jersey 07114

| INVOICE DATE | INVOICE NO. |
|---|---|
| 12/19/06 | 156315 |

530019

S O L D
T O

REACT INC
621 ROBIN LANE
HARTLAND, WI 53029

530020

S H I P
T O

SUN CHEMICAL CORP.
2642 WEST STATE ROAD 28
FRANKFORT, IN 46041

**PLEASE REMIT TO:** SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 0719

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. | COLL | TERMS |
|---|---|---|---|---|---|---|
| 1132 | 279399 | JOON CHOO | TOTAL CONNECT | XX | | NET 30 DAYS |

| QUANTITY | | | | | |
|---|---|---|---|---|---|
| ORDERED | SHIPPED | BACK ORDERED | DESCRIPTION | PRICE PER LB. | AMOUNT |
| 24000 | 24000 | | MAXI-RUB 101<br>60 X 400 LB  DRUM | 2.750 | $66,000. |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 12/19/06    $66,000.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended."
Subject to the terms and conditions contained on the reverse side thereof.

| INVOICE NO. |
|---|
| 156315 |

**CUSTOMER FILE COPY**

13-2006  08:05          7323559765                                    P.2

B/L #504373

## CARRIER:
## DATE:

CUSTOMER NO:

| TO: | Sun Chemical Frankfort | FROM: | REACT, INC. |
|---|---|---|---|
| STREET: | 2642 West State Road 28 | Street: | 621 ROBIN LANE |
| DESTINATION: Frankfort, IN 46041 | | Destination: | HARTLAND, WI 53029 |

Route:
Vehicle #

|   | X | PREPAID |
|---|---|---|
|   |   | COLLECT |

(COD)
Collect on delivery $                       COD FEE TO BE PAID BY:
☐ CHECK HERE IF COMPANY CHECK IS ACCEPTABLE    ☐ shipper  ☐ consignee

| NO. UNITS | HAZ MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
|---|---|---|---|
| 60 | | DRUM MAXI-RUB 101 PRINTING INK RAW MATERIAL | 24,000 lbs |
| | | SUN CHEMICAL PO#6500-673210 Class 55 | |
| | | SUN CHEMICAL ITEM# 532-393 | |
| | | CO SHIPMENT SAMPLES | |
| | | | |
| | | ***THIRD PARTY BILLING TOTAL CONNECTION | |
| | | 1478 MORRIS AVENUE | |
| | | UNION, NJ 07083 | |
| | | | |
| | | REACT, INC. | |
| | | 621 ROBIN LANE | |
| | | HARTLAND, WI 53029 | |

NOTE Where the rate is dependent on value, shippers are required
To note specifically in writing the agreed or declared value of property.  Where the value
shown, shipment is subject to the undertaking Clause.  The agreed or declared value of the
property is hereby specifically stated by the shipper to be not exceeding

Subject to Section 7 of the conditions, if this shipment is to be delivered to the
consignee without recourse on the consignor, the consignor shall sign the
following statement.
The carrier shall not make delivery of this shipment without payment of freight
and all other lawful charges
(Signature of consignor)

RECEIVED, subject to the classifications and pricing, in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted
(contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the word carrier being understood throughout
this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route,
otherwise to deliver to another carrier on the route to said destination.  It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to
destination and as on each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the Bill of lading terms and
conditions in the governing classification on the date of shipment.

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED, AND LABELED, AND
ARE IN PROPER CONDITION FOR TRANSPORTATION, ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF
TRANSPORTATION.
Shipper hereby certifies that he is familiar with all of the Bill of Lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by
the shipper and accepted for himself and his assigns.

| Shipper: | Carrier: |
|---|---|
| REACT, INC. | |
| Per: | Per: |
| DEBBIE TAVARES | |
| | Date: |

*"X" to designate HAZARDOUS MATERIAL as defined in the Department of Transportation Regulations Governing Transportation
of Hazardous Materials.  The use of this column is an optional method of designating hazardous materials on bills of lading per
Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials.

**Sun Chemical must sign acknowledging acceptance of delivery in good condition.
Per:                                    Date:  12-19-6

## STRAIGHT BILL OF LADING

TARGA

TOTAL P.05



**Shamrock Technologies, Inc.**
Foot of Pacific Street
Newark, New Jersey 07114

Phone: 973-242-2999
Fax: 973-242-8074

| INVOICE DATE | INVOICE NO. |
| --- | --- |
| 12/19/06 | 156319 |

530019

747476

```
S O T  REACT INC                    S    SUN CHEMICAL CORP.
O L D  621 ROBIN LANE               H I  100 SUN CHEMICAL COURT
       HARTLAND, WI 53029           T O  HOPKINSVILLE, KY 42240
                                    P
   L                                  L
```

PLEASE REMIT TO:   SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 0719

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. COLL | TERMS |
| --- | --- | --- | --- | --- | --- |
| 1135 | 279477 | JOON CHOO | TOTAL CONNECT | XX | NET 30 DAYS |

| QUANTITY | | BACK ORDERED | PRODUCT NAME & DESCRIPTION | PRICE PER LB. | NET AMOUNT |
| --- | --- | --- | --- | --- | --- |
| ORDERED | SHIPPED | | | | |
| 24000 | 24000 | | MAXI-RUB 102<br>60 X 400 LB  DRUM | 2.350 | $56,400.00 |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 12/19/06        $56,400.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended."
Subject to the terms and conditions contained on the reverse side thereof.

CUSTOMER FILE COPY

| INVOICE NO. |
| --- |
| 156319 |

**CARRIER:** _MLWK_ _PDQTL Express_     **DATE:** 12/19/02

**CUSTOMER NO:**

| TO: Sun Chemical-Hopkinsville | FROM: REACT, INC. |
|---|---|
| 100 Sun Chemical Court | Street: 621 ROBIN LANE |
| Destination: Hopkinsville, KY 42240 | Destination: HARTLAND, WI 53029 |

Route:
Vehicle #

☐ X PREPAID
COLLECT

(COD)
Collect on delivery $

COD FEE TO BE PAID BY:
☐ shipper   ☐ consignee

☐ CHECK HERE IF COMPANY CHECK IS ACCEPTABLE

| NO. UNITS | HAZ MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
|---|---|---|---|
| 60 | | DRUMS MAXI-RUB 102 PRINTING INK RAW MATERIAL | 24,000 lbs |
| | | SUN CHEMICAL PO #6500-673119 | |
| | | SUN CHEMICAL ITEM # 532-397    CLASS: 55 | |
| | | CO SHIPMENT SAMPLES | |
| | | ***THIRD PARTY BILLING TOTAL CONNECTION 1478 Morris Avenue Union, NJ 07083 | |
| | | REACT, INC. 621 ROBIN LANE HARTLAND, WI 53029 | |

NOTE-Where the rate is dependent on value, shippers are required
To state specifically in writing the agreed or declared value of property. Where no value
shown, shipment is subject to the inadvertence Clause. The agreed or declared value of the
property is hereby specifically stated by the shipper to be not exceeding

Subject to Section 7 of the conditions, if this shipment is to be delivered to the
consignee without recourse on the consignor, the consignor shall sign the
following statement.
The carrier shall not make delivery of this shipment without payment of freight
and all other lawful charges.
(Signature of consignor)

$ _____ Per _____

RECEIVED, subject to the classification and pricing, in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification on the date of shipment.

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED, AND LABELED, AND ARE IN PROPER CONDITION FOR TRANSPORTATION, ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION.

Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

| Shipper: REACT, INC. | Carrier: |
|---|---|
| Per: DEBBIE TAVARES | Per: |
| | Date: |

a"X" to designate HAZARDOUS MATERIAL as defined in the Department of Transportation Regulations Governing Transportation of Hazardous Materials. The use of this column is an optional method of designating hazardous materials on bills of lading per Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials.

**Sun Chemical must sign acknowledging acceptance of delivery in good condition.**
Per:       Date:

# STRAIGHT BILL OF LADING

Third Party Billing To
Total Connection
1478 Morris Ave.
Union, NJ 07083



**Phone: 973-242-2999**
**Fax: 973-242-8074**

Shamrock Technologies, Inc.
Foot of Pacific Street
Newark, New Jersey 07114

| INVOICE DATE | INVOICE NO. |
|---|---|
| 01/17/07 | 156824 |

530019

```
S   REACT INC
O   621 ROBIN LANE
T   HARTLAND, WI 53029
D
```

530006

```
S   SUN CHEMICAL
H   651 GARDEN STREET
I   CARLSTADT NJ 07072
P
```

**PLEASE REMIT TO:    SHAMROCK TECHNOLOGIES, INC. P.O. BOX 18024 NEWARK, NJ 0719**

| CUSTOMER ORDER NO. | OUR ORDER NO. | SALESPERSON | SHIPPED VIA | PPD. | COLL. | TERMS |
|---|---|---|---|---|---|---|
| 1139 | 280038 | JOON CHOO | R & L | | XX | NET 30 DAYS |

| QUANTITY | | BACK ORDERED | NO. | SPECIAL MARKS — DESCRIPTION | PRICE PER LB. | AMOUNT |
|---|---|---|---|---|---|---|
| ORDERED | SHIPPED | | | | | |
| 800 | 800 | | | MAXI-RUB 101<br>2 X 400 LB DRUM | 2.750 | $2,200.0 |

SALES TERMS - NET 30 DAYS FROM SHIP DATE 01/17/07        $2,200.00

"Seller represents that with respect to the production of the articles and/or the performance of the services covered by this order, it has fully complied with the Fair Labor Standards Act of 1938, as amended."
Subject to the terms and conditions contained on the reverse side thereof.

**CUSTOMER FILE COPY**

| INVOICE NO. |
|---|
| 156824 |

7323559765    P.05/05

BL# 304427 RAL

**CARRIER**

78155854-2

DATE

This allowed to protect solely the terms and condition of Carrier's Individual and Collective Terms, including Limitation of Liability and the Uniform Straight Bill of Lading, NMFC 100 Series

**CUSTOMER**

| TO: Sun Chemical – Teterboro | FROM: REACT, INC. |
|---|---|
| STREET: 651 Garden Street | Street: 621 ROBIN LANE |
| DESTINATION: Carlstadt, NJ 07072 | Destination: HARTLAND, WI 53029 |

☐ PREPAID
☒ COLLECT

(COD)

Collect on delivery $

COD FEE TO BE PAID BY:
☐ shipper   ☐ consignee

☐ CHECK HERE IF COMPANY CHECK IS ACCEPTABLE

| NO. UNITS | HAZ MT | KIND OF PACKAGING, DESCRIPTION OF ARTICLES SPECIAL MARKS AND EXCEPTIONS | WEIGHT |
|---|---|---|---|
| 2 |  | DRUM MAXI-RUB 101 PRINTING INK RAW MATERIAL | 800 lbs |
|  |  | SUN CHEMICAL PO#4800-677140 Class: 55 |  |
|  |  | SUN CHEMICAL ITEM# 532-393 |  |
|  |  | CO SHIPMENT SAMPLES |  |
|  |  |  |  |
|  |  | ***SUN CHEMICAL COLLECT*** |  |
|  |  |  |  |
|  |  |  |  |
|  |  | REACT, INC. |  |
|  |  | 621 ROBIN LANE |  |
|  |  | HARTLAND, WI 53029 |  |

NOTE-Where the rate is dependent on value, shippers are required To state specifically in writing the agreed or declared value of property. Where no value is shown, shipper is subject to the Inadvertence Clause. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

Subject to Section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

(Signature of consignor)

RECEIVED, subject to the classifications and lawfully in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the Bill of Lading terms and conditions in the governing classification on the date of shipment.

THIS IS TO CERTIFY THAT THE ABOVE NAMED MATERIALS ARE PROPERLY CLASSIFIED, DESCRIBED, PACKAGED, MARKED, AND LABELED, AND ARE IN PROPER CONDITION FOR TRANSPORTATION, ACCORDING TO THE APPLICABLE REGULATIONS OF THE DEPARTMENT OF TRANSPORTATION.

Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

| Shipper: | Carrier: |
|---|---|
| REACT, INC. |  |
| Per: | Per: |
| DEBBIE TAVARES | Date: |

"X" to designate HAZARDOUS MATERIAL as defined in the Department of Transportation Regulations Governing Transportation of Hazardous Materials. The use of this column is an optional method of designating hazardous materials on bills of lading per Section 172.201 and 172.202(b) of the regulations governing the transportation of such materials

**Sun Chemical must sign acknowledging acceptance of delivery in good condition.

Per Behnt MgM ____ 2 row Date: 1-17-07

## STRAIGHT BILL OF LADING

TOTAL P.05

IRA DANIEL TOKAYER

ATTORNEY AT LAW

1333 BROADWAY

SUITE 905

NEW YORK, NEW YORK 10018

TEL: (212) 695-5250

FAX: (212) 695-5450

April 20, 2007

BY FAX: (212) 688-8315
Wm. Lee Kinnally, Jr.
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York 10022

           Re:    Shamrock Technologies, Inc. v. React-NTI, LLC,
                   CV 07-3114 (JSR)

Dear Mr. Kinnally:

        Thank you for your call yesterday in which you acknowledged receipt of the Notice of Removal and confirmed that the time within which defendant must answer or move with respect to the Complaint is April 26, 2007. I write this letter to advise you of defendant's intention to make a motion to dismiss the complaint pursuant to Fed. R. Civ P. 12(b)(1) and (6). Indeed, I request that you discontinue the case. As explained below, as a matter of law, the parties must exhaust the contractual dispute resolution procedures before proceeding to litigation. Moreover, as a practical matter, we think the parties would be well served by proceeding with negotiation and mediation before incurring any further significant litigation costs.

        Specifically, the License Agreement attached as Exhibit A to the Complaint provides (in ¶ 13 entitled "Dispute Resolution") in pertinent part:

               [A]ny dispute concerning the validity, interpretation, and performance or non-performance of this Agreement will be resolved by prompt, good faith negotiation of the parties initiated upon written notice from one party to the other.

Paragraph 13 further obligates the parties submit to mediation in the event the required "prompt, good faith negotiation" has not resulted in a resolution of the matter. Certainly, this case involves the "validity, interpretation, and performance or non-performance" of the Agreement. Yet, no "written notice" of negotiation has been provided. Neither has mediation been conducted.

        Our position that the suit should be dismissed is based not only on a strict application of the law but also upon our view that the contractually agreed-upon method of dispute resolution is particularly appropriate due to the parties' ongoing relationship involving patented technology

Wm. Dan Kinnally, Jr.
Gibney, Anthony & Flaherty, LLP
April 20, 2007
Page 2

and confidential information. We also believe that negotiation and mediation are uniquely appropriate in the first instance in connection with defendant's as yet unasserted and significant counterclaims.

Please advise me of your earliest availability so that we may arrange to telephonically conference with the Court in connection with defendant's proposed motion. I look forward to your prompt response.

Very truly yours,

Ira Daniel Tokayer

Kinnally Ltr 01.wpd