IRA DANIEL TOKAYER, ESQ.
Attorney for Defendant
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

SHAMROCK TECHNOLOGIES, INC.        :   07 CV 3114 (JSR)

                Plaintiff,     :

    -against-                        :

REACT-NTI, LLC,                    :

                Defendant.     :
------------------------------------x

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

Defendant React-NTI, LLC ("React-NTI"), by its attorney, Ira Daniel Tokayer, Esq., submits this Reply Memorandum of Law in further support of its motion to dismiss the Complaint.

### Preliminary Statement

Plaintiff's opposition to React-NTI's motion to dismiss is noteworthy for its admissions and concessions. Indeed, taken together, plaintiff's admissions and concessions on their face compel the granting of React-NTI's motion. Specifically:

- Plaintiff does not deny that it executed a License Agreement containing a broad mediation clause covering "any dispute concerning the validity, interpretation, and performance or non-performance of this Agreement."

- Plaintiff does not deny that each of its claims and React-NTI's putative counterclaims concern "the validity, interpretation, and performance or non-performance of [the License] Agreement."

- Plaintiff does not deny that it commenced this action without giving the required 60-day written notice, negotiating in good faith and then participating in the mediation process as set forth in the contract's dispute resolution provision.

- Plaintiff concedes that an agreement to mediate is valid and enforceable and requires the dismissal of any action commenced in violation thereof.

Notwithstanding the above, plaintiff opposes defendant's motion on the grounds that there exists no "dispute" to be mediated - an absurd claim given the pendency of this litigation. (Point I.) Equally baseless is plaintiff's claim that the dispute resolution provision is anything other than a "clear, express and unequivocal" agreement to engage in a clearly-defined sequential notice-negotiation-mediation process as an alternative and condition precedent to litigation, which plaintiff has admittedly and unashamedly ignored. (Point II.)

ARGUMENT

I

THE DISPUTE BEFORE THIS COURT
IS SUBJECT TO THE DISPUTE RESOLUTION PROVISION
OF THE LICENSE AGREEMENT

The Federal Arbitration Act, 9 U.S.C. §§ 1-15 (1988), favors alternative dispute resolution provisions in commercial contexts. It expressly provides that such agreements "shall be valid, irrevocable, and enforceable." It has been held that courts must construe these agreements "as broadly as possible" and "any doubts" concerning its scope must be resolved in favor of arbitration or mediation, including questions of the construction of the language of such agreements. "Furthermore, at this stage of the litigation, a court should not consider the merits of the underlying controversy." CB Richard Ellis, Inc. v. American Environmental Waste Management, 1998 WL 903495 (E.D.N.Y. Dec. 4, 1998).

Under this standard, plaintiff's contention that the dispute between the parties need not be mediated must be rejected. Clearly, each of plaintiff's claims concerns "the validity, interpretation, and performance or non-performance" of the License Agreement, including the claim for non-payment of commissions, as do React-NTI's claims which have not yet been asserted.

Plaintiff cites no authority for its novel argument that an "acknowledgment" by React-NTI in a non-judicial context

means there is no "dispute" as per the dispute resolution clause of the License Agreement.  Creating an exception to the mediation requirement for allegedly "admitted" claims would be inconsistent with the federal policy favoring alternative forms of dispute resolution such as mediation over litigation.  Moreover, it would require the Court to overstep its role and improperly examine the "merits" of the underlying controversy.

Saying "there is simply no dispute to negotiate, mediate or litigate" (Pl. Br. at 3) disregards React-NTI's refusal to pay the amounts plaintiff erroneously alleges are due and ignores plaintiff's need to file suit to recover those amounts.  Indeed, it is React-NTI's position that the alleged non-payment of commissions are part and parcel of a larger dispute between the parties and inextricably linked to React-NTI's substantial claims against plaintiff.  If plaintiff does not agree that the commissions are one piece of a broader dispute to be negotiated and mediated, it ignores the scope and practical realities of good faith negotiation and effective mediation.  Indeed, the very fact that plaintiff does not agree is the best evidence that a "dispute" exists which must be the subject of negotiation and mediation in the first instance, and not litigation.

In addition, under New York law which the parties agreed governs (see ¶ 15(c) of the License Agreement), React-NTI's counterclaims constitutes an absolute defense to

plaintiff's claim.  Moreover, even if plaintiff obtains an order for partial summary judgment on its claim for goods sold and delivered, plaintiff's other claims and React-NTI's putative counterclaims would preclude the entry of a final judgment and/or the execution thereon.  Thus, the claim will in all events necessarily be addressed in the context of the negotiation and mediation of the other claims between the parties which plaintiff all but concedes is absolutely required.[1]

---

[1] See, e.g., Illinois McGraw Electric Co. v. John J. Walters, Inc., 7 N.Y.2d 874, 196 N.Y.S.2d 1003 (1959) ("it is improper to award summary judgment while there exists a meritorious counterclaim for an amount equal to or greater than that demanded in the complaint . . . even though defendant has not disputed the sale, delivery and price of the goods as alleged in the complaint"); Omark Industries, Inc. v. Lubanko Tool Company, 266 F.2d 540, 541 (2d Cir. 1959) (staying execution of the judgment on claim for goods sold and delivered until the determination of the counterclaims).  See also 10 Wright, Miller & Cane, Federal Practice and Procedure ¶ 2659, citing Fed. R. Civ. P. 54(b) (in cases of multiple claims and counterclaims, strong federal policy requires that the district court make an "express determination that there is no just reason for delay" and only in the "infrequent case" where failure to enter judgment will have a "harsh effect"); Siemens Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 326, 327 (S.D.N.Y. 2004) ("as a general rule, the policy against piecemeal review counsels against routinely entering otherwise interlocutory orders as Rule 54(b) final judgments").

II

THE MEDIATION CLAUSE
CONTAINED IN THE LICENSE AGREEMENT
CLEARLY EVINCES AN INTENT TO MEDIATE
<u>AS A CONDITION PRECEDENT TO SUIT</u>

Without any valid factual or legal ground, plaintiff asks this court to find that the License Agreement does not reflect the parties' intention that notice, negotiation and mediation precede the commencement of litigation. This contention is without merit.

For the dispute resolution clause in the License Agreement to have any meaning at all, it must be read as a pre-condition to litigation. The mediation clause is entitled "Dispute Resolution." It broadly covers "any dispute concerning the validity, interpretation, and performance or non-performance of this Agreement." It mandates that disputes "<u>will be</u> resolved by prompt good faith negotiations initiated upon written notice from one party to the other." It requires mediation after 60 days from notice if "good faith negotiation" does not result in a resolution of the dispute. It further specifies that:

> The parties <u>shall</u> endeavor to settle the dispute by mediation under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Disputes in Waukesha, Wisconsin. The neutral third party will be selected from the CPR Panels of Neutrals unless the parties agree otherwise. All fees and expenses of the mediation shall be borne by the parties equally. However, each party shall bear the expenses of its own counsel, experts, travel, and preparation and presentation.

6

Thus, the parties have agreed to embark upon a clearly-defined quasi-judicial alternative dispute resolution process with fully-defined sequential steps, with 60 days written notice, good faith negotiation and specific rules for mediation including rules regarding the selection of a panel, venue, evidence and procedure and the allocation of cost.  The use of the words "will" and "must" reflect the mandatory nature of the notice-negotiation-mediation requirement.

The absence of an express reference to post-mediation litigation is an irrelevancy.  Obviously, the dispute resolution process specified in the License Agreement contemplates and is designed to avoid litigation altogether, not merely to precede it.  Plaintiff cites no case holding that the words "condition precedent" are a magic talisman, without which the parties may not otherwise give expression to their intent to create a mandatory alternative to litigation and extensive research has found none.  In <u>Coburn v. Grabowski</u>, 1997 WL 309572 (Conn. Super. May 29, 1997), for example, the court found a mediation clause which did not expressly describe mediation as a "condition precedent" to nonetheless have been intended as such.

The cases cited by plaintiff are inapposite.  None address mediation.  Rather, they reflect the narrow practices of the construction industry and the role of the architect in resolving disputes during the "work in progress" phase of a construction job.  In finding the absence of a "clear, express

and unequivocal" condition precedent to suit in <u>Mario & Di Bono Plastering Co. v. Rivergate Corp.</u>, 140 A.D.2d 164, 527 N.Y.S.2d 417 (1st Dept. 1988), the court noted that the process and the architect's role therein was "not defined" and a federal district court noted that the operative contractual provision therein was meant to apply to the "work in progress" phase of the job only. See <u>Shook of West Virginia, Inc. v. York City Sewer Authority</u>, 756 F. Supp. 848, 853 (M.D. Pa. 1991). <u>Bombardier Corp. v. National Railroad Passenger Corp.</u>, 298 F. Supp. 2d 1 (D.D.C. 2002), was also a case involving the construction industry. In addition, the agreement therein provided that the parties' participation was optional, as opposed to the mandatory provisions of the License Agreement herein.

Thus, the parties have expressed a "clear, express and unequivocal" intent to engage in a clearly-defined sequential notice-negotiation-mediation process prior to litigation, which plaintiff has ignored. However, even if the dispute resolution clause was found to be in any way ambiguous, federal law requires that it be construed "as broadly as possible" and that "any doubts" concerning its scope be resolved in favor of mediation, as noted above.

## CONCLUSION

WHEREFORE, defendant respectfully requests that the Court grant its motion to dismiss in its entirety.

Dated:  New York, New York
        May 25, 2007

```
                              _____/s/_____
                              IRA DANIEL TOKAYER, ESQ. (IDT-4734)
                              Attorney for Defendant
                              42 West 38th Street, Suite 802
                              New York, New York 10018
                              (212) 695-5250
```

Motion Dismiss MOL Reply 01.wpd