UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAMROCK TECHNOLOGIES, INC.,          07-CV-3114 (JSR)

    Plaintiff,

vs.                               ANSWER, COUNTERCLAIM AND
                                        JURY TRIAL DEMAND
REACT-NTI, LLC,

    Defendant and
    Counterclaimant.

---

Defendant REACT-NTI, LLC ("REACT"), for its Answer to the Complaint of Shamrock Technologies, Inc. ("Shamrock"), states:

1.    Admits that Paragraph 1 of the Complaint purports to set forth a summary of the action.

2.    Alleges that Paragraph 15 of the License Agreement speaks for itself; alleges that the Complaint raises subject matters outside of the scope of Paragraph 15 of the License Agreement and therefore denies the allegations contained in Paragraph 2 of the Complaint.

3.    Alleges that Paragraph 15 of the License Agreement speaks for itself; alleges that the Complaint raises subject matters outside of the scope of Paragraph 15 of the License Agreement and therefore denies the allegations contained in Paragraph 3 of the Complaint.

4.    Admits, upon information and belief, the allegations contained in Paragraph 4 of the Complaint.

5.  Alleges that the principal place of business of REACT is 4201 Woodland Road, P.O. Box 69, Circle Pines, Minnesota; admits the remaining allegations contained in Paragraph 5 of the Complaint.

6.  Alleges that the License Agreement, including Paragraph 3 thereof, speaks for itself; denies the remaining allegations contained in Paragraph 6 of the Complaint.

7.  Alleges that the License Agreement, including Paragraph 2 thereof, speaks for itself; denies the remaining allegations contained in Paragraph 7 of the Complaint.

8.  With respect to Paragraph 8 of the Complaint, realleges Paragraphs 1 through 7 hereinabove.

9.  Admits that Shamrock has sent invoices to React for products shipped by Shamrock to Sun-USA; alleges that the invoices speak for themselves; denies the remaining allegations contained in Paragraph 9 of the Complaint.

10. Admits the allegations contained in Paragraph 10 of the Complaint.

11. Alleges, as set forth in REACT's Counterclaim, that Shamrock owes to REACT damages in excess of the invoices Licensed Products and therefore denies the allegations contained in Paragraph 11 of the Complaint.

12. With respect to Paragraph 12 of the Complaint, realleges Paragraphs 1 through 11 hereinabove.

13. Denies the allegations contained in Paragraph 13 of the Complaint.

14. Denies the allegations contained in Paragraph 14 of the Complaint.

15. With respect to Paragraph 15 of the Complaint, realleges Paragraphs 1 through 14 hereinabove.

16. Admits that REACT does not presently manufacture the anti-rub ink additives itself and that it has entered into arrangements with others for the manufacture of such products; denies the remaining allegations of Paragraph 16 of the Complaint.

17. Admits that REACT has engaged a third party to manufacture a limited quantity of products for Sun-USA; alleges that the decision to locate and engage a third party was caused by the discovery of efforts by Shamrock to replace REACT as a supplier to Sun; denies the remaining allegations contained in Paragraph 17 of the Complaint.

18. Denies the allegations contained in Paragraph 18 of the Complaint.

19. With respect to Paragraph 19 of the Complaint, realleges Paragraphs 1 through 18 hereinabove.

20. Admits that Shamrock has sent correspondence to REACT concerning the License Agreement; alleges that the correspondence speaks for itself; denies the remaining allegations contained in Paragraph 20 of the Complaint.

21. Admits that REACT has sent correspondence to Shamrock concerning the License Agreement; alleges that the correspondence speaks for itself; denies the remaining allegations contained in Paragraph 21 of the Complaint.

22. With respect to Paragraph 22 of the Complaint, realleges Paragraphs 1 through 21 hereinabove.

23. Alleges that it is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning an inventory of manufactured Licensed Products; denies the remaining allegations contained in Paragraph 23 of the Complaint.

With respect to the second paragraph in the Complaint numbered "23," alleges that REACT has no obligation, under the License Agreement or otherwise, to purchase the purported inventory.

24. Denies the allegations contained in Paragraph 24 of the Complaint.

25. Alleges that, consistent with the terms of the License Agreement and because of Shamrock's failure to perform under the License Agreement in good faith, REACT has supplied Sun-USA with products that were manufactured by a third party; denies the remaining allegations contained in Paragraph 25 of the Complaint.

26. Denies the allegations contained in Paragraph 26 of the Complaint.

27. With respect to Paragraph 27 of the Complaint, realleges Paragraphs 1 through 27 hereinabove.

28. Alleges that the License Agreement, including Paragraph 3(f) thereof, speaks for itself; denies the remaining allegations contained in Paragraph 28 of the Complaint.

29. Alleges that both REACT and Shamrock have requested, in writing, that the other make its books and records available for audit and inspection; alleges that the correspondence between the parties on this subject speaks for itself; alleges that, before suitable and mutual arrangements could be made, Shamrock preemptively commenced this litigation; denies the remaining allegations contained in Paragraph 29 of the Complaint.

30. Except as expressly admitted, alleged, or otherwise qualified hereinabove, denies each and every allegation contained in the Complaint.

## AFFIRMATIVE DEFENSES

31. Some of all of the purported causes of action fail to state a claim upon which relief can be granted.

32. The Complaint contains purported causes of action which, under Paragraph 15(c) of the License Agreement, are improperly venued in New York City.

33. Shamrock's purported claim for unjust enrichment is barred by virtue of the existence of an expressed contract.

34. Some or all of the purported causes of action are barred by Shamrock's failure to perform under the License Agreement in good faith and/or breaches of the License Agreement.

35. Shamrock's claim concerning a purported oral agreement is barred by the Statute of Frauds.

36. Shamrock's purported damages, if any, are caused by its own conduct or the conduct of others over whom REACT has no control.

## COUNTERCLAIM

REACT-NTI, LLC ("REACT"), for its Counterclaim against Shamrock Technologies, Inc. ("Shamrock"), states:

## PRELIMINARY STATEMENT

1. This is an action for compensatory damages, an accounting and injunctive relief arising out of an exclusive licensee's decision to disregard its obligations under a license agreement and promote its own interest at the expense of the licensor from whom the licensee originally gained access to valuable technology.

## PARTIES

2. REACT is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 4201 Woodland Road, P.O. Box 69, Circle Pines, Minnesota.

3. Upon information and belief, Shamrock is a corporation organized and existing under the laws of the State of New York and has its principal place of business at The Foot of Pacific Street, Newark, New Jersey.

## JURISDICTION

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. This action has been properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

## FACTS

**Shamrock Obtains an Exclusive License to REACT's Anti-Rub Technology.**

5. REACT is a technology-based company focused on developing proprietary chemical additives, many of which are renewable resource based additives that provide superior functionality to both personal care and industrial applications.

6. Among the technologies developed and owned by REACT are technologies relating to polytetrafluoroethylene ("PTFE" also known by the DuPont trademark of "Teflon") based compounds or additives which provide excellent anti-rub (also referred to as "anti-abrasion") and slip characteristics to ink formulations.

7. Shamrock became interested in REACT's proprietary technology pertaining to anti-rub ink additives and entered into a Confidential Disclosure Agreement dated March 29, 2001 to conduct an analysis of the technology. Thereafter, in order to obtain access to the proprietary technology, Shamrock entered into a License Agreement dated April 10, 2001 with REACT, LLC ("License Agreement"). A copy of the License Agreement is attached as Exhibit A to Shamrock's Complaint herein. The terms and conditions of the License Agreement are hereby incorporated by reference as though fully set forth at this place.

8. REACT is the successor-in-interest in and to the business of REACT, LLC and has succeeded to the rights and obligations of REACT, LLC under the License Agreement. REACT has performed, except as reasonably excused by the conduct of Shamrock, all of its obligations under the License Agreement.

9. Pursuant to Paragraph 2 of the License Agreement, Shamrock was granted "the sole and exclusive license to use the Licensed Technology and to manufacture, market and sell the Licensed Products throughout the entire World except for any and all sales of the Licensed Products sold and shipped to locations in the United States of Sun Chemical Corporation, its holding company, affiliates, sister companies, subsidiaries, and successors and assigns (collectively, 'Sun-USA')."

10. Under Paragraph 3(f) of the License Agreement, Shamrock is obligated to "keep accurate records showing the quantity and type of all Licensed Products sold by Shamrock." In addition, both parties are obligated to make their books and records available for audit and inspection.

11. Shamrock is obligated, under Paragraph 5(b) and (d) to manufacture, market and sell the Licensed Products as well as to maintain adequate personnel and equipment to manufacture, market and sell the Licensed Products.

12. REACT, LLC and REACT have provided confidential information to Shamrock which is presently the sole property of REACT. Under Paragraph 12(b) the License Agreement, Shamrock agreed not to use or disclose any such confidential information except as expressly allowed under the express terms of the License Agreement.

**Shamrock Obtains the Right to Manufacture Anti-Rub Products to Supply to REACT's Customer Sun-USA.**

13. Before the parties entered into the License Agreement, REACT developed a relationship with Sun-USA, a manufacturer of inks. Sun-USA became interested in REACT's anti-rub products which could be added to ink formulations, and a supplier-customer relationship was created.

14. Under Paragraph 2 of the License Agreement, Shamrock agreed to manufacture and ship all Licensed Products sold by REACT, LLC, and now REACT, to Sun-USA and be compensated therefor pursuant to an agreed upon formula. In performing this and its other obligations under the License Agreement, Shamrock is obligated to act in good faith.

15. REACT's relationship with Sun-USA flourished. Over time, annual sales to Sun-USA increased to $4.7 million.

**Shamrock Improperly Causes REACT to Lose its Relationship with Sun-USA.**

16.     In violation of its good faith obligations under the License Agreement, Shamrock engaged in communications with Sun-USA calculated to promote Shamrock's own interests and deprive REACT-NTI of its respective existing and prospective contractual relationships with Sun-USA.

17.     Shortly after the License Agreement was signed, representatives of Shamrock began having unilateral communications with Sun, communications which included a proposal that Sun-USA consider purchasing a competing PTFE based compound from Shamrock directly to replace the MR-102 PTFE compound that Shamrock was producing on behalf of REACT for sale to Sun-USA. REACT communicated to Shamrock that such conduct was inappropriate under the License Agreement. Thereafter, at least for a brief period of time, Shamrock appeared to confine itself to its proper role with respect to Sun-USA.

18.     In 2004, REACT discovered that Shamrock had again submitted new samples of competing anti-rub ink compounds to Sun-USA for technical evaluation. Later that same year, REACT learned that Shamrock had also been attempting to interfere with REACT's relationship with Alvar, the company that manufactured a critical ingredient for the REACT anti-rub compounds.

19.     To address Shamrock's resumption of inappropriate conduct, representatives of REACT met with Shamrock management in Cleveland, Ohio, in December 2004. Shamrock acknowledged submitting samples of materials to Sun-USA

in direct competition to the products being supplied by REACT and agreed to cease such conduct.

20. In March, 2005, REACT learned from Sun-USA that Shamrock had again submitted another competing PTFE based compound to Sun-USA for evaluation. Once again, after REACT contacted Shamrock, Shamrock committed to withdrawing its substitute offering.

21. In 2006, Shamrock resumed efforts to replace REACT at Sun-USA. Towards that end, on or about November 12, 2006, Shamrock submitted a proposal to Sun-USA. Upon information and belief, the proposal, in part, contemplated a three-phase program involving a switch whereby Shamrock would first supply Sun-USA anti-rub compounds directly to the exclusion of REACT, and later would transfer the manufacture of these anti-rub compounds to Sun-USA with Shamrock only providing the PTFE ingredient.

22. Following the communication of Shamrock's proposal to Sun-USA, Shamrock and Sun-USA entered into a Mutual Confidentiality Agreement dated January 8, 2007. Thereafter, Shamrock's communications with Sun-USA continued. The communications included the providing of sample products, the testing of samples and, upon information and belief, the disclosure of Confidential Information as defined in Paragraph 12 of the License Agreement.

23. Throughout its communications with Sun-USA, Shamrock was acting with dishonest, unfair or improper means to deprive REACT of its existing and prospective contractual relationship with Sun-USA.

24. In March, 2007, Shamrock tested several powders in various formulations and communicated to Sun-USA that two powders performed very well when compared to the current PTFE compounds in use by Sun-USA that were being supplied by REACT.

25. Sun-USA, in response to Shamrock's efforts, decided to cease purchasing anti-rub ink additives from React.

26. Shamrock's communications and conduct with Sun-USA as described herein have been undertaken with knowledge of both the existing contractual relationship between REACT and Sun-USA and REACT's prospective contractual relationships with Sun-USA.

27. Shamrock's communications and conduct with Sun-USA as described herein have been conducted in secret, without any notice of said communications and conduct having been provided by Shamrock to REACT. Indeed, while Shamrock was secretly working to deprive REACT of its relationship with Sun-USA, Shamrock continued to do business with REACT in a manner calculated to lead REACT to believe that Shamrock was faithfully performing its obligations under the License Agreement, including its obligations to not disclose confidential information and to, in good faith, manufacture and ship Licensed Products sold by REACT to Sun-USA. As such, Shamrock's conduct was dishonest, unfair, fraudulent and otherwise improper.

**Shamrock Fails to Perform Its Obligations to Manufacture, Market and Sell Licensed Product to Others.**

28. Although Shamrock is obligated under Paragraph 5(b) and (d) to manufacture, market and sell the Licensed Products, as well as to maintain adequate

personnel and equipment to manufacture, market and sell the Licensed Products, Shamrock has reported that it has made no sales of Licensed Products other than sales to Sun-USA on behalf of REACT.

29.   There has been and is a demand for Licensed Products and/or other products manufactured using derivative formulations based on the Licensed Technology.

30.   Upon information and belief, and in order to promote its own products, Shamrock has not maintained adequate personnel and equipment to manufacture, market and sell the Licensed Products.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

31.   REACT realleges Paragraphs 1 through 30 hereinabove.

32.   The activities of Shamrock which caused REACT to lose its relationship with Sun-USA are in breach of the License Agreement, including the implied covenant of good faith and fair dealing.

33.   As a further result hereof, REACT has and will continue to lose sales of Licensed Products, thereby causing damage in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS AND
## PROSPECTIVE ECONOMIC ADVANTAGE

34.   REACT realleges Paragraphs 1 through 33 hereinabove.

35.   The knowledge and conduct of Shamrock, including but not limited to Shamrock's knowledge of REACT's relationship with Sun-USA, Shamrock's intent to interfere with that relationship, and Shamrock's use of dishonest, unfair or improper

means which caused Sun-USA to terminate its relationship with REACT, constitutes intentional interference with economic relations and prospective economic advantage.

36. As a result thereof, REACT has and will be damaged in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### UNFAIR COMPETITION

37. REACT realleges Paragraphs 1 through 36 hereinabove.

38. Shamrock's conduct as described above constitutes unfair competition.

39. As a result thereof, REACT has and will be damaged in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

40. REACT realleges Paragraphs 1 through 39 hereinabove.

41. Shamrock's conduct, including its apparent efforts to replace REACT at Sun-USA and its apparent efforts to market its own anti-rub products instead of the products of REACT, have caused Shamrock to become unjustly enriched.

42. As a result thereof, REACT has and will be damaged in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### BREACH OF CONTRACT AND ACCOUNTING

43. REACT realleges Paragraphs 1 through 42 hereinabove.

44. Pursuant to Paragraph 3(f) of the License Agreement, REACT-NTI has made a request to audit and inspect Shamrock's books and records as would be pertinent to verify Shamrock's sales of Licensed Products under the License Agreement.

45. Shamrock has refused to make its books and records available for audit and inspection.

46. REACT is entitled to an order directing Shamrock to make its books and records available for audit and inspection and further directing Shamrock to account to REACT-NTI for all sales of Licensed Products sold by Shamrock.

## SIXTH CLAIM FOR RELIEF
## BREACH OF CONTRACT

47. REACT realleges Paragraphs 1 through 46 hereinabove.

48. In partial response to the request of REACT to inspect Shamrock's books and records, Shamrock stated that it has made no sales of Licensed Products to anyone other than REACT for Sun-USA and that there are no other products manufactured using derivative formulations based on the Licensed Technology.

49. Upon information and belief, Shamrock has failed to perform its obligations under Paragraphs 5(b) and (d) of the License Agreement to market the Licensed Products, including its obligation to maintain adequate personnel to market and sell the Licensed Products throughout the world, Shamrock and has also breached the implied covenant of good faith and fair dealing.

50. As a result thereof, REACT has been damaged and will continue to be damaged in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### INJUNCTION

51.     REACT realleges Paragraphs 1 through 50 hereinabove.

52.     Upon information and belief, Shamrock has disclosed Confidential Information as defined by the License Agreement to Sun-USA and, upon information and belief, has and may continue to disclose Confidential Information to others.

53.     The disclosure of Confidential Information has and will cause REACT irreparable harm for which there is no adequate remedy at law.

54.     Shamrock should be preliminarily and permanent enjoined from disclosing Confidential Information.

WHEREFORE, REACT prays that the Court enter judgment as follows:

1.     That Shamrock take nothing by its Complaint, that its Complaint be dismissed with prejudice and on the merits.

2.     That Shamrock be preliminarily and permanently enjoined from disclosing Confidential Information as defined by and in violation of the License Agreement.

3.     That, under the terms of the License Agreement, Shamrock make its books and records available for audit and inspection, and that Shamrock account to REACT for all sales of Licensed Products sold by Shamrock.

4.     That REACT be awarded damages in an amount to be proven at trial.

5.     That REACT be awarded its costs, disbursements and attorneys' fees, together with such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Defendant demands trial by jury on all claims and issues properly triable by jury.

Dated: July 22, 2008	IRA DANIEL TOKAYER

By: _s/ Ira Daniel Tokayer_
Ira Daniel Tokayer (IT-4734)

42 West 38th Street
Suite 802
New York, New York 10018
Telephone: (212) 695-5250

OF COUNSEL

**OPPENHEIMER WOLFF & DONNELLY LLP**

| | |
|---|---|
| Edward M. Laine | MN#059535 |
| Adam C. Trampe | MN #349240 |

Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 607-7000

**ATTORNEYS FOR DEFENDANT AND COUNTERCLAIMANT**

OPPENHEIMER: 2493748 v02 07/22/2008